**UNITED STATES of America, Plaintiff,**

v.

**Jay TUROFF, Alan Silver, Harriet Silver and Herman Schwartz, a/k/a "Hy Schwartz," Defendants.**

No. CR–86–00422(S).

United States District Court,
E.D. New York.

Feb. 5, 1987.

708

Edward Rappaport, Rappaport & Frost, New York City (Robert Bennet Adler, of counsel), for Jay Turoff.

Leopold Laufer, New York City, of counsel, for Alan Silver.

Lawrence Farkash (Patricia M. Karish, of counsel), New York City, for Harriet Silver.

Robert S. Franklin, Robert S. Franklin, P.C., New York City, for Herman Schwartz.

Andrew J. Maloney, U.S. Atty., E.D.N.Y. (Robert Stolz and Michael H. Gold, Asst. U.S. Attys., of counsel), Brooklyn, N.Y., for U.S.

## MEMORANDUM AND ORDER

GLASSER, District Judge:

A grand jury has returned a twenty-five count superseding indictment against defendants Jay Turoff, Alan Silver, Harriet Silver, and Herman Schwartz. Before the court are various pretrial motions by each of the defendants. Each defendant joins in his co-defendants' motions to the extent those motions are not incompatible with his own position. The opinion that follows

treats those motions that had not been decided from the bench following oral argument.

### Sufficiency of Mail Fraud Counts

Count 1 of the superseding indictment charges all four defendants with conspiring to violate the mail fraud statute, 18 U.S.C. § 1341. Counts 2 through 19 charge the four defendants with substantive mail frauds, with counts 2 through 16 dealing with mailings of HYFIN Credit Union checks and counts 17 through 19 dealing with mailings of HYFIN quarterly statements. The Silvers have moved to dismiss counts 1 through 19. Turoff moves to dismiss counts 2 through 19, and Schwartz makes no motion to dismiss. Turoff, however, joined in all motions by co-defendants to the extent that such motions were not inconsistent with his own. Therefore, the court will rule on the adequacy of the allegations in counts 1 through 19 with respect to all the defendants. Because the court finds that the mail fraud counts have been pleaded adequately, the motion to dismiss counts 1 through 19 is denied.

"The elements of the offense of mail fraud ... are (1) a scheme to defraud, and (2) the mailing of a letter, etc., for the purpose of executing the scheme." *Pereira v. United States,* 347 U.S. 1, 8, 74 S.Ct. 358, 362, 98 L.Ed. 435 (1954); *accord, e.g., United States v. Pisani,* 773 F.2d 397, 409 (2d Cir.1985); *United States v. Standard Drywall Corp.,* 617 F.Supp. 1283, 1290 (E.D.N.Y.1985); *United States v. Beatty,* 587 F.Supp. 1325, 1326 (E.D.N.Y. 1984). *Pereira*'s reference to "for the purpose of executing the scheme," derived from the language of section 1341, was reiterated in *United States v. Lane,* 474 U.S. 438, 106 S.Ct. 725, 733, 88 L.Ed.2d 814 (1986). The determination whether a use of the mail was "for the purpose of executing" a fraud turns on "whether the 'mailings were sufficiently closely related to [the] scheme.'" *United States v. Castile,* 795 F.2d 1273, 1278 (6th Cir.1986) (quoting *United States v. Maze,* 414 U.S. 395, 399, 94 S.Ct. 645, 648, 38 L.Ed.2d 603

(1974)); *cf. id.* at 1277 (*Lane* essentially reiterates *Maze* ).

Even mailings that take place after a scheme has been effectuated may come within the prohibition of the mail fraud statute, so long as they are necessary to execution of the scheme. *See United States v. Elkin,* 731 F.2d 1005, 1008 (2d Cir.), (late mailing lulled victim of scheme into believing all was well), *cert. denied,* 469 U.S. 822, 105 S.Ct. 97, 83 L.Ed.2d 43 (1984); *United States v. Pick,* 724 F.2d 297, 300 (2d Cir.1983). But the sweep of the statute does not encompass mailings that postdate completion of the fraudulent scheme. *See Maze, supra,* 414 U.S. at 402, 94 S.Ct. at 649.

"[T]o make out a mail fraud violation, the Government must show that the scheme was devised with the specific intent to defraud.... [T]he prosecution must also demonstrate that the use of the mails in furtherance of the scheme was reasonably foreseeable. Furthermore, the deceit must have gone to the nature of the bargain; that is, any nondisclosures or affirmative misrepresentations must have been material. And although the Government need not show that the scheme's victims were in fact defrauded, the prosecution must prove that some actual harm or injury was at least contemplated." *United States v. Von Barta,* 635 F.2d 999, 1005–06 n. 14 (2d Cir.1980) (citations omitted), *cert. denied,* 450 U.S. 998, 101 S.Ct. 1703, 68 L.Ed.2d 199 (1981).

"Although a mere breach of fiduciary duty, standing alone, may not necessarily constitute a mail fraud, the concealment by a fiduciary of material information which he is under a duty to disclose to another under circumstances where the non-disclosure could or does result in harm to the other is a violation of the statute." *United States v. Bronston,* 658 F.2d 920, 926 (2d Cir.1981) (citations omitted), *cert. denied,* 456 U.S. 915, 102 S.Ct. 1769, 72 L.Ed.2d 174 (1982).

The reach of section 1341 extends beyond attempts to defraud a victim of tangible property. "Intangibles such as 'confiden-

tial and nonpublic commercial information' fall within the definition of 'property' under the mail fraud statute." *United States v. Newman,* 664 F.2d 12, 19 (2d Cir.1981), *cert. denied,* 464 U.S. 863, 104 S.Ct. 193, 78 L.Ed.2d 170 (1983). Since "[f]raudulent schemes designed to cause losses of an intangible nature clearly come within the terms of the statute," *United States v. Margiotta,* 688 F.2d 108, 121 (2d Cir.1982), *cert. denied,* 461 U.S. 913, 103 S.Ct. 1891, 77 L.Ed.2d 282 (1983), it follows that "a public official may be prosecuted under 18 U.S.C. § 1341 when his alleged scheme to defraud has as its sole object the deprivation of intangible and abstract political and civil rights of the general citizenry," *id.*

■ Against this background, it is clear why courts have called the scope of the mail fraud statute "seemingly limitless." *See United States v. Siegel,* 717 F.2d 9, 14 (2d Cir.1983); *Margiotta, supra,* 688 F.2d at 120; *Standard Drywall, supra,* 617 F.Supp. at 1290; *cf. Von Barta, supra,* 635 F.2d at 1005 (absence of legislative guidelines has left courts broad discretion to apply statute to myriad fraudulent schemes devised by unscrupulous entrepreneurs). At this point in the proceedings, the only question before the court is whether the superseding indictment has pleaded violations of sections 1341. The broad sweep of the statute compels an affirmative answer.

The introduction to counts 2 through 19 describes a seven-fold scheme to defraud. Paragraph 34 alleges that the mailings charged in the mail fraud counts were made "[f]or the purpose of executing the aforesaid scheme and artifice and attempting to do so." Although the defendants protest that the enumerated mailings could not be said to further the scheme, that conclusion is hardly mandated on the face of the indictment. The jury will be instructed on the elements of mail fraud, and it will determine whether the government has satisfied, *inter alia,* the "for the purpose of" element. Nor does the court find merit in the Silvers' contention that the indictment fails to plead specific intent; paragraph 33 alleges that the defendants

"knowingly, wilfully and unlawfully did devise and intend to devise a scheme and artifice...."

For similar reasons, the court finds that count one is adequately pleaded under the conspiracy, 18 U.S.C. § 371, and mail fraud, *id.* § 1341, statutes. When stripped to its essentials, defendants' argument is that the government will be unable to prove the elements of the offenses charged in counts 1 through 19. That, of course, is a jury question, and the motions to dismiss these counts, accordingly, are denied.

### Severance of Counts

Turoff and the Silvers have moved to sever counts 20 through 25 of the indictment, which deal with tax violations, from counts 1 through 19, which deal with the Compumeter scheme. In support of their argument that joinder of the counts is improper, they rely in large measure on cases interpreting rule 8(a) of the Federal Rules of Criminal Procedure, which covers the joinder of offenses. But it is well settled that "when a defendant in a multiple-defendant case challenges joinder of offenses, his motion is made under 8(b) rather than 8(a)," *United States v. Papadakis,* 510 F.2d 287, 300 (2d Cir.), *cert. denied,* 421 U.S. 950, 95 S.Ct. 1682, 44 L.Ed.2d 104 (1975); *accord United States v. Turbide,* 558 F.2d 1053, 1061 n. 7 (2d Cir.), *cert. denied,* 434 U.S. 934, 98 S.Ct. 421, 54 L.Ed.2d 293 (1977); *United States v. Castellano,* 610 F.Supp. 1359, 1408 (S.D.N.Y. 1985); *United States v. Clemente,* 494 F.Supp. 1310, 1315 (S.D.N.Y.1980), *aff'd on other grounds sub nom. Fiumara v. United States,* 727 F.2d 209 (2d Cir.), *cert. denied,* 466 U.S. 951, 104 S.Ct. 2154, 80 L.Ed.2d 540 (1984); 1 C. Wright, Federal Practice and Procedure § 143, at 479 & n. 1 (2d ed. 1982).

■ "The question" before the court "is whether the co-defendants 'participated ... in the same series of acts or transactions constituting an offense or offenses.'" *Papadakis, supra,* 510 F.Supp. at 300 (quoting Fed.R.Crim.P. 8(b)). Of course, "participation in a series of transactions does

not require participation in each transaction." *United States v. Teitler,* 802 F.2d 606, 615 (2d Cir.1986). And "tax counts can properly be joined with non-tax counts where it is shown that the tax offenses arose directly from the other offenses charged." *United States v. Kopituk,* 690 F.2d 1289, 1313 (11th Cir.1982), *cert. denied,* 461 U.S. 928, 103 S.Ct. 2090, 77 L.Ed.2d 300, 463 U.S. 1209, 103 S.Ct. 3542, 77 L.Ed.2d 1391 (1983). The government's contention is that all counts of the indictment concern the fraudulent disbursement of HYFIN funds and that it does not matter that the victims of the frauds are different. At a minimum, the proof of the two alleged schemes will overlap, because the government charges that the tax law violations stem from the defendants' ill-gotten gains in the Compumeter scheme. If the government is able to prove this connection at trial, joinder certainly will have been proper. *See id.* at 1314. If not, the government assumes the risks attendant upon such failure of proof. *See id.* at 1313; *accord United States v. Coppola,* 788 F.2d 303, 307 (5th Cir.1986) (joinder proper where same evidence was necessary on tax counts and conspiracy, theft, and sale counts); *United States v. Bibby,* 752 F.2d 1116, 1121 (6th Cir.1985) (appropriate to join tax charges against one defendant with fraud charges against same defendant and co-defendants if tax evasion charges arise from common illicit enterprise), *cert. denied,* —— U.S. ——, 106 S.Ct. 1183, 89 L.Ed.2d 300 (1986).

In short, the indictment as pleaded provides a basis for joinder of the tax and Compumeter charges. The court need not surmise whether the government will carry its trial burden before ruling that there was no misjoinder and the severance motions must be denied.

### Schwartz Severance

Defendant Herman Schwartz seeks severance of his trial from that of his co-defendants. Fed.R.Crim.P. 14. In support of the motion, Schwartz advances three theories:

(1) Because the majority of the evidence is not directed at Schwartz, he will suffer prejudicial spillover should he go to trial with Turoff and the Silvers;

(2) His defense is antagonistic to that of his co-defendants; and

(3) He is a necessary witness to the defense of Turoff, but will invoke his fifth amendment privilege if called by Turoff in a joint trial.

The court finds that each of these theories lacks merit; accordingly, the motion to sever Schwartz's trial is denied.

### A. *Prejudicial Spillover*

[4] Although there is "some risk of prejudicial spillover in any multi-defendant trial," *United States v. Persico,* 621 F.Supp. 842, 852 (S.D.N.Y.1985), "[a] certain amount of prejudice to a defendant is regarded as acceptable given the judicial economies that result from joinder," *United States v. Carpentier,* 689 F.2d 21, 27 (2d Cir.1982), *cert. denied,* 459 U.S. 1108, 103 S.Ct. 735, 74 L.Ed.2d 957 (1983). Thus, even if Schwartz could demonstrate a better chance of acquittal at a separate trial, he would not have satisfied his heavy burden under rule 14. *See United States v. Carson,* 702 F.2d 351, 366 (2d Cir.), *cert. denied,* 462 U.S. 1108, 103 S.Ct. 2456, 2457, 77 L.Ed.2d 1335 (1983). In a conspiracy case such as this, the general practice is to try alleged co-conspirators together, even if the evidence against some defendants is stronger than the evidence against others. *See United States v. Mejia,* 578 F.Supp. 1541, 1551 (E.D.N.Y.), *aff'd mem. sub nom. United States v. Bermudez,* 751 F.2d 371 (2d Cir.1984).

The indictment alleges that Schwartz was an equal shareholder with Harriet Silver in Electronic Compumeter, Inc. and that he incorporated the company with Alan Silver. The government's theory is that Schwartz was an active participant in Compumeter's affairs and that the corporation was at the heart of the charged conspiracy, with Schwartz having a direct financial stake in the alleged fraud. Given

these allegations, the court cannot credit Schwartz's contention that he will be subjected to substantial prejudicial spillover. In all likelihood, the evidence admissible in a joint trial would be admissible against Schwartz in a separate trial because of the conspiracy charge. *See United States v. Cunningham*, 723 F.2d 217, 230 (2d Cir. 1983), *cert. denied*, 466 U.S. 951, 104 S.Ct. 2154, 80 L.Ed.2d 540 (1984). To the extent that testimony against his co-defendants will not be admissible against Schwartz, he will have the protection of limiting instructions to the jury, which, presumably, are followed. *See United States v. Potamitis*, 739 F.2d 784, 790 (2d Cir.), *cert. denied*, 469 U.S. 918, 105 S.Ct. 297, 83 L.Ed.2d 232, 469 U.S. 934, 105 S.Ct. 332, 83 L.Ed.2d 269 (1984).

## B. *Antagonistic Defenses*

In support of his argument that his defense is antagonistic to that of the Silvers, Schwartz focuses on the indictment's allegation that the Silvers withdrew approximately $179,000 from Compumeter accounts at HYFIN and deposited the money into their personal accounts. Schwartz's view is that the Silvers' conduct constituted a civil fraud against him and a diversion of Compumeter's assets. Thus, Schwartz argues that his defense will help prove the government's allegations against the Silvers.

█ Additionally, Schwartz notes that he told the United States Attorney's office that he knew nothing of an order of 1200 meters by a "Herbert Lum," thus giving the lie to a representation by Turoff and the Silvers to the State Investigation Commission. This contention need not long detain the court, since the government has represented that it will not use Schwartz's statement in its case-in-chief and Schwartz's attorney has represented that his client will not testify. Therefore, Schwartz's position on Lum and the 1200 meters cannot result in antagonism between his defense and those of his co-defendants.

As to Schwartz's position on the $179,000, the Second Circuit has held, following *United States v. Berkowitz*, 662 F.2d 1127, 1134 (5th Cir. Unit A Dec. 1981), that:

> A simple showing of some antagonism between defendants' theories of defense does not require severance. "[T]he defense of a defendant reaches a level of antagonism [with respect to the defense of a co-defendant] that compels severance of that defendant, if the jury, in order to believe the core of testimony offered on behalf of that defendant, must necessarily disbelieve the testimony offered on behalf of his co-defendant."

*Carpentier, supra*, 689 F.2d at 27–28.

Under this test, the defendant has a "difficult burden of demonstrating sufficient prejudice to have warranted severance." *United States v. Finkelstein*, 526 F.2d 517, 525 (2d Cir.1975), *cert. denied*, 425 U.S. 960, 96 S.Ct. 1742, 48 L.Ed.2d 205 (1976); *accord, e.g., United States v. DiGiovanni*, 544 F.2d 642, 644–45 (2d Cir.1976). Here, Schwartz's version is that he knew nothing about the $179,000 and the fabrication of "Herbert Lum." This is not tantamount to a defense by Schwartz that directly inculpates his co-defendants. Certainly, belief in Schwartz's version would not compel disbelief of the co-defendants' version to the extent that their convictions would be compelled. Under the stringent test of *Berkowitz* and *Carpentier*, Schwartz is not entitled to severance on the ground of antagonistic defenses.

## C. *Co-defendant Testimony*

Counsel for Schwartz—but not Schwartz—represents that, if tried before Turoff and the Silvers, Schwartz would be willing to testify at Turoff's trial. He would testify that a government witness, Zenek Podolsky, offered Turoff an ownership interest in a company that would produce electronic taxi meters, and that Turoff flatly rejected the offer. Schwartz will refuse to testify at a joint trial.

The court in *Finkelstein, supra*, listed four nonexclusive factors to consider on a

motion for severance predicated on the need for co-defendant testimony:

> (1) the sufficiency of the showing that the co-defendant would testify at a severed trial and waive his Fifth Amendment privilege; (2) the degree to which the exculpatory testimony would be cumulative; (3) the counter arguments of judicial economy; and (4) the likelihood that the testimony would be subject to substantial, damaging impeachment.

526 F.2d at 523–24 (citations omitted).

■ Schwartz's proffer of testimony, in the absence of an affidavit stating his willingness to take the stand, cannot create much confidence that he actually would testify were the trials severed. It does not help that Schwartz's willingness to testify is conditioned upon his being tried first. *See United States v. Bari,* 750 F.2d 1169, 1177 (2d Cir.1984), *cert. denied,* 472 U.S. 1019, 105 S.Ct. 3482, 87 L.Ed.2d 617 (1985); *United States v. Standard Drywall Corp.,* 617 F.Supp. 1283, 1297 (E.D.N.Y.1985).

It is questionable, at best, how important Schwartz's testimony would be, since the indictment charges Turoff with receiving money from HYFIN, rather than Compumeter. Thus, the offer to testify that Turoff turned down an improper inducement from a meter company would scarcely be exculpatory and, if exculpatory, would be rather cumulative of available character testimony.

Unquestionably, judicial economy is served by a joint trial of all defendants, since Schwartz is implicated in the heart of the conspiracy alleged in the indictment, and separate trials would almost double the total trial time.

Finally, Schwartz would be subjected to substantial impeachment with regard to his version of how he became a shareholder in Compumeter, as well as with regard to his conduct in general. Because none of the *Finkelstein* factors militates in favor of severance, and because Schwartz has shown no other ground for severance, his motion is denied.

### Surplusage

Rule 7(d) of the Federal Rules of Criminal Procedure provides: "The court on motion of the defendant may strike surplusage from the indictment or information." Moving under rule 7(d), the Silvers ask the court to strike from the indictment references to New York state law, to failures to post collateral for loans or to execute certain documents, to unsecured financing, and to checks that did not pass through the mails.

Judge Weinfeld has observed:

> Motions to strike surplusage from an indictment "will be granted only where it is clear that the allegation complained of is not relevant to the charge contained in the indictment and is inflammatory and prejudicial." If the evidence of the allegation is admissible and relevant to the charge, then it will not be stricken, regardless of its prejudicial effect.

*United States v. Ianniello,* 621 F.Supp. 1455, 1479 (S.D.N.Y.1985) (footnotes omitted); *accord United States v. Persico,* 621 F.Supp. 842, 860 (S.D.N.Y.1985). Even words such as "among others" will not be stricken unless "they serve no useful purpose and allow the jury to draw the inference that the defendant is accused of crimes not charged in the indictment." *United States v. DeFabritus,* 605 F.Supp. 1538, 1547 (S.D.N.Y.1985).

■ Under this exacting standard, *United States v. Napolitano,* 552 F.Supp. 465, 480 (S.D.N.Y.1982), *aff'd in relevant part sub nom. United States v. Ruggiero,* 726 F.2d 913 (2d Cir.), *cert. denied,* 469 U.S. 831, 105 S.Ct. 118, 83 L.Ed.2d 60 (1984); *United States v. DePalma,* 461 F.Supp. 778, 797 (S.D.N.Y.1978), the Silvers' motion to strike must be denied. All the claimed surplusage is *relevant,* even if it does not describe *elements* of the offenses charged. Naturally, the defendants will be entitled to request limiting instructions during the trial and before the court charges the jury. Such instructions will guarantee that the jury understands with what the defendants are and are not charged, but the defendants are not entitled to preclude the

government from pleading and proving conduct that is relevant to the defendants' alleged crimes.

### Similar Act Evidence

The government has stated its intent to introduce similar act evidence under rule 404(b) of the Federal Rules of Evidence. Specifically, the government hopes to prove that Alan and Harriet Silver failed to report interest and dividend income for the tax years 1981, 1982, and 1983, which are the three tax years immediately preceding the year that is the subject of the tax counts against the Silvers. Also, the government intends to prove that Jay Turoff maintained an undisclosed bank account for one of his private businesses, Turoff Tower Graphics, Inc., and used the account to pay employees off the books and to hide income.

The court will not rule on the admissibility of similar act evidence as against Turoff, because he has not moved *in limine.* The Silvers, however, have moved *in limine,* contending that the evidence regarding their tax returns for 1981 through 1983 is not admissible under rule 404(b) and, alternatively, that it would be unduly prejudicial and must be excluded under rule 403.

The government contends that the similar act evidence pertaining to the Silvers is relevant to the elements of knowledge and intent, which are likely to be in dispute at trial. The government proposes to introduce the evidence at the close of the defense case or at any earlier time that knowledge and intent are disputed.

Our appellate court has held that similar act evidence going to identity or common scheme may be introduced in the prosecution's case-in-chief. *United States v. Figueroa,* 618 F.2d 934, 939 (2d Cir.1980). The court continued:

> On the other hand, if the evidence is offered to prove the defendant's *knowledge or intent,* the offer of similar acts evidence should await the conclusion of the defendant's case and should be aimed at a specifically identified issue. This enables the trial judge to determine whether the issue sought to be proved by the evidence is really in dispute and, if so, to assess the probative worth of the evidence on this issue against its prejudicial effect.

*Id.* (emphasis added).

In a similar vein, the Second Circuit has recently observed:

> In determining whether to allow "similar act" evidence, the trial judge is required to perform a balancing analysis, and he may exclude the evidence, even if it has some relevance to prove knowledge, if its probative value is substantially outweighed by its potential for prejudice. Fed.R.Evid. 403, 404(b) Advisory Committee Note.

*United States v. Peterson,* 808 F.2d 969, 974 (2d Cir.1987).

The advisory committee note to rule 403 states, *inter alia,* that "consideration should be given to the probable effectiveness or lack of effectiveness of a limiting instruction.... The availability of other means of proof may also be an appropriate factor." With regard to rule 404(b), the advisory committee commented: "No mechanical solution is offered. The determination must be made whether the danger of undue prejudice outweighs the probative value of the evidence in view of the availability of other means of proof and other factors appropriate for making decisions of this kind under Rule 403."

■ As the authorities indicate, the court is required to balance a variety of factors carefully when it rules on a 404(b) proffer. Under the present circumstances, it is impossible for the court to perform the balancing test, because no one can predict with any confidence what the trial evidence will be. Therefore, it will be necessary for the court to rule on the government's 404(b) proffer at the time that it is made. Concededly, deferral of a ruling on the motion *in limine* injects some uncertainty into counsel's conduct of the trial. On the other hand, counsel for both sides are aware of the extensive case law on rule 404(b), and will be in a position to anticipate

the extent to which doors are being opened as the trial progresses. They will also be well situated to argue the 404(b) question at the time of the government's proffer. For the foregoing reasons, the court defers ruling on the admissibility of similar act evidence with regard to the Silvers.

### Conclusion

Other defense motions do not require extensive discussion. The request that the court examine grand jury transcripts *in camera* is denied because of the presumption of regularity in grand jury proceedings. The requests for particulars are moot to the extent that the court directed the government, during oral argument, to turn over certain material. To the extent such direction was not made, the requests for particulars are held to lack merit and are denied.

SO ORDERED.