UNITED STATES of America, Appellee,

v.

Jay TUROFF, Alan Silver and Harriet Silver, Defendants–Appellants.

Nos. 460, 463 and 464, Dockets 87–1278, 87–1382 and 87–1383.

United States Court of Appeals, Second Circuit.

Argued Dec. 1, 1987.

Decided July 14, 1988.

---

12. Interestingly enough plaintiff has been joined by his parents, Puerto Rican residents, in this suit.

Roger B. Adler, New York City, for defendants-appellants.

Ephraim Savitt, Asst. U.S. Atty., E.D.N.Y. (Andrew J. Maloney, U.S. Atty., John Gleeson, Asst. U.S. Atty., E.D.N.Y., of counsel), for appellee.

Before NEWMAN and
CARDAMONE, Circuit Judges, and
GRAY*, District Judge.

CARDAMONE, Circuit Judge:

On these appeals from criminal convictions for tax conspiracy and tax fraud, appellants raise a number of issues. The principal one is that it is impermissible to join in a single indictment multiple offenses involving tax and mail fraud schemes charged against the several defendants. Fed.R.Crim.P. 8(b) permits joinder of defendants if they participated "in the same series of acts or transactions constituting an offense or offenses." Rule 8(a) states that for joinder of offenses the acts or transactions must either constitute a "common scheme or plan" or be otherwise "connected together."

It has long been settled law that the joint trial of charges against several accuseds when they are not for the same act or transaction, or for connected acts or transactions, or provable by the same evidence is prejudicial. *See McElroy v. United States*, 164 U.S. 76, 79–80, 17 S.Ct. 31, 32–33, 41 L.Ed. 355 (1896). Also well-recognized is the proposition that joint trials serve the public interest in economy, convenience, and the prompt trial of the accused. *See United States v. Lane*, 474 U.S. 438, 106 S.Ct. 725, 732, 88 L.Ed.2d 814 (1986). The former is supported by considerations of fairness to defendants, and the latter by the need for the efficient administration of criminal justice.

The phrase "connected together" is not defined in Rule 8 and in this case—as in most joinder determinations—how it is defined suggests the outcome because the phrase takes its meaning from the frame of reference in which it is placed. If defined broadly everything may be connected, but when the reference is narrowed the number of events connected to each other is reduced. For example, if the frame of reference for stars is the solar system, all the visible stars are related, but if the

reference is "Casseopia," then only those in that constellation are connected. In that same way choosing the definitional frame of reference dictates whether joinder is proper in a given case. Hence, in deciding joinder under 8(b) the test posited must be broad enough to maintain "efficient" justice, yet not so all-encompassing as substantially to prejudice the accuseds. Such is our task on this appeal.

## BACKGROUND AND FACTS

The charges against Jay Turoff and Alan and Harriet Silver revolved around two fraudulent schemes: (1) a plan by appellants and others to exploit Turoff's power as the New York City Taxi and Limousine Commission Chairman to foster the production and marketing of an electronic meter for New York City medallion taxicabs—the basis for the mail fraud charges—and (2) an arrangement by appellants to obtain accounts at Hyfin Credit Union which allowed them to earn substantial taxable interest that the credit union did not report to the Internal Revenue Service (IRS) and the appellants did not declare as income on their federal tax returns. To understand the interrelationship between these schemes, it is necessary to set forth the complex facts in some detail.

### 1. *Hyfin Operations*

The illegal combination began on November 7, 1979 when Turoff, who was then Chairman of the New York City Taxi and Limousine Commission (Taxi Commission), met with Edmund Lee, Treasurer of the Hyfin Credit Union (Hyfin or Credit Union), at Hyfin's Brooklyn offices. Turoff controlled the regulation and licensing requirements of the nearly 12,000 medallion taxicabs in New York City; Lee controlled the finances of the third largest state-chartered credit union in New York State. During that meeting, Lee explained that Hyfin generally did not report sizable deposits to the IRS and that if Turoff opened an account at Hyfin, the interest earned

---

* Honorable William P. Gray, United States District Court for the Central District of California, sitting by designation.

(called "dividends" in the credit union context) would not be reported. The Credit Union had not reported interest income to the IRS since 1980. Lee also explained that Turoff would be able to deduct as interest expense the payments he made on Hyfin loans. Subsequently, Lee opened account #69510 in Turoff's name with Turoff's initial deposit of $10,000. At the same time, Turoff obtained a $10,000 loan from Hyfin. Over the next five years Turoff made a number of sizable deposits into his account, but he never reported the substantial interest income generated to the IRS. In return for these benefits, Turoff supplied Lee with confidential Taxi Commission lists of medallion taxi owners, which enabled Lee to review and approve loan applications by taxi owners more quickly than competing loan institutions.

### 2. *Compumeter Scheme*

In 1981, two developers demonstrated to Turoff their prototype electronic taxi meter that met mayoral commission specifications for an accurate, permanently affixed meter that would discourage taxi owners from underreporting revenues. Turoff described the meter to a friend, Herman (Hy) Schwartz, and urged him to develop and market a competing electronic taxi meter. Turoff told Schwartz that he could guarantee a market by mandating the installation of such meters in every medallion taxicab in New York City.

Excited by this prospect, Schwartz sought financing from the Silvers, friends of Turoff who owned a Brooklyn printing business. Schwartz and the Silvers formed a new company, Electronic Compumeter, Inc. (Compumeter) and Harriet Silver became Compumeter's president. The new company's stock was divided into three equal parts—one to Mrs. Silver, one to Schwartz, and one unissued. On September 12, 1982 Schwartz formally advised Turoff that Compumeter had developed an electronic taxi meter and requested Taxi Commission testing of a prototype.

On May 11, 1983 the Taxi Commission unanimously approved the Compumeter prototype. On the same day, Turoff brought Alan Silver to Hyfin's offices and introduced him to Lee. Lee suggested that Silver open a Hyfin account to expedite the processing of loans if a financing arrangement for Compumeter production costs could be agreed upon. Silver said that he wanted the "same deal Jay [Turoff] has." Lee understood this to mean a nonreported interest account. Account #415990 was then opened for Alan Silver in trust for Harriet Silver with an initial deposit of five dollars. Lee also advanced Silver a $10,000 Hyfin loan. The Silvers later opened other interest-bearing joint and individual accounts at Hyfin.

### 3. *Hyfin Financing of Compumeter*

Lee, Alan Silver, and Hy Schwartz then agreed upon the following scheme: Lee would advance Hyfin funds for Compumeter's production costs without the usual formalities; Silver and Schwartz would pay Lee a $100 "commission" for every meter sold. To advance this conspiracy, Turoff backed a December 9, 1983 Taxi Commission order requiring the installation of electronic meters in all medallion taxis by June 1984.

Lee opened eight Hyfin accounts (accounts #1000, #940, #950, #960, #970, #980, #990, #930) in 1983 and 1984 to be used as internal control accounts through which disbursements of Hyfin funds were funnelled for Compumeter's manufacturing costs and for financing taxi owners' purchases. Because the laws governing credit unions prohibit corporate loans, these accounts were all opened in the name of Harriet Silver, who executed signature cards for them. By April 1984 Compumeter's production progress and sales were proceeding more slowly than expected. Compumeter had received 1,500 purchase orders and total sales of no more than 3,000 meters were anticipated. When Turoff demanded to be paid for his role in the scheme, Lee transferred $30,000—$10 per meter—from Harriet Silver's Hyfin account #960 into Turoff's account #69510.

### 4. *Appellants' Unreported Hyfin Account Interest*

While Lee handled the Compumeter financing, the Silvers made significant de-

posits to their newly opened personal accounts. On October 11, 1983 a joint account, # 457150, was opened in the Silvers' names. On February 22, 1984 accounts # 510050 and # 510060 were opened in the names of Harriet Silver and Alan Silver, respectively. As of December 31, 1984 the closing balance on these three accounts totalled $205,577.97. The $6,947.40 interest on the funds in these accounts earned in 1984 was not reported to the IRS by Hyfin or the Silvers. That failure is the basis for the charges of making false statements on their joint tax return against the Silvers in Count Eighteen of the indictment. Hyfin's statements for account # 69510 reveal that Turoff earned interest income of $19,437 during the years 1982 through 1985. Although Turoff deducted almost all the interest expenses charged to his loans, he did not declare interest income from account # 69510 on his tax returns for the four relevant years. His false statements on those returns account for the indictment charges against Turoff in Counts Fourteen through Seventeen.

### 5. *Proceedings Below*

The jury rendered its verdict on April 10, 1987 after a two-month trial of Turoff, the Silvers, and a fourth codefendant in the United States District Court for the Eastern District of New York (Glasser, J.). Appellant Jay Turoff was found guilty of conspiracy to defraud the United States in the collection of tax revenues in violation of 18 U.S.C. § 371 (1982) (Count Thirteen), and making false statements in his federal income tax returns for the tax years 1982 through 1985 in violation of 26 U.S.C. § 7206(1) (1982) (Counts Fourteen through Seventeen). Turoff had also been charged with conspiracy to commit mail fraud (Count One) and 11 substantive mail fraud counts (Counts Two through Twelve). The district court dismissed four of the 11 substantive mail fraud counts, and the jury acquitted him of the seven remaining counts and the mail fraud conspiracy. Turoff was sentenced to concurrent three-year terms on each count for which he was convicted, four months to be served in pris-on and the balance on probation. He was also fined $50,000 and assessed $250.

Appellants Alan and Harriet Silver were found guilty of conspiracy to defraud the United States in the collection of tax revenues in violation of 18 U.S.C. § 371 (1982) (Count Thirteen) and making false statements in their joint federal tax return for the tax year 1984 in violation of 26 U.S.C. § 7206(1) (1982) (Count Eighteen). The Silvers were also found guilty of conspiracy to commit mail fraud (Count One) and eight substantive mail fraud charges (Counts Two through Nine), but these verdicts were later vacated by the district court in light of the Supreme Court's decision in *McNally v. United States*, — U.S. ——, 107 S.Ct. 2875, 97 L.Ed.2d 292 (1987). The Silvers were each sentenced to concurrent three-year probationary terms, with a special condition of four months of house detention and 200 hours community service, and each of them was fined $25,000.

As noted, Count One charged appellants with a conspiracy to commit mail fraud and Counts Two through Twelve charged them with substantive mail fraud crimes arising from the Compumeter scheme. All of these counts against appellants have dropped by the wayside through dismissal or acquittal. Nevertheless, because this opinion is focused on the initial joinder in the indictment of these mail fraud counts with the tax charges, the Compumeter scheme is critical to an understanding of the issues on appeal.

### DISCUSSION

Appellants raise five challenges to their convictions. They claim that the evidence was legally insufficient to establish that they (1) had the requisite criminal intent in failing to report their interest income on their federal tax returns, (2) conspired with each other to cheat on their taxes by not reporting this income, or (3) participated in the single tax fraud conspiracy for which they were convicted instead of multiple conspiracies. Appellants assert, in addition, that (4) the charges relating to the mail fraud scheme were impermissibly joined with the tax fraud counts, and (5)

the trial court improperly limited cross-examinations of prosecution witnesses. Turoff also argues that the district court incorrectly admitted "similar act" evidence in support of the tax fraud charges.

Although none of these claims warrant reversal, each will be discussed. Our principal reason for writing is to clarify the rules applicable to the joinder of multiple charges and multiple defendants in a single indictment, to which we turn first.

### A. Joinder of the Mail Fraud and Tax Fraud Charges Against Turoff and the Silvers

Prior to trial, appellants moved to sever the tax fraud charges from the mail fraud charges arising from the Compumeter scheme. The district court denied the motion, noting that "[a]t a minimum, the proof of the two alleged schemes will overlap, because the government charges that the tax law violations stem from the defendants' ill-gotten gains in the Compumeter scheme." *United States v. Turoff*, 652 F.Supp. 707, 711 (E.D.N.Y.1987). After this denial of severance, the prosecutor called to Judge Glasser's attention that defendants Alan Silver and Harriet Silver were charged with failing to report interest income derived from sources other than the Compumeter scheme charged in the mail fraud counts. The Silvers responded by renewing their severance motion. Concluding that joinder would be appropriate if the prosecution could prove that the Silvers' tax violations were the products of an "overall corrupt relationship" among the defendants and Hyfin, Judge Glasser again denied the motion. *See United States v. Turoff*, · 691 F.Supp. 607 (E.D.N.Y.1987) (Supplemental Memorandum and Order). Appellants now challenge their convictions upon the ground that joinder of the tax fraud charges with the mail fraud charges was improper under Fed.R.Crim.P. 8.

### 1. *Rule 8 in General*

■ The principal question is whether an indictment against multiple defendants joining these different sets of charges—each of which involves an alleged conspiracy and alleged substantive crimes—is proper under Fed.R.Crim.P. 8. Unlike review of a motion made pursuant to Rule 14 (severance of counts as relief from prejudicial joinder of defendants or offenses) or Rule 13 (joinder at trial of separate indictments against multiple defendants) for abuse of discretion, the propriety of joinder under Rule 8 raises a question of law and is subject to full appellate review. *United States v. Lane*, 474 U.S. 438, 106 S.Ct. 725, 732 n. 12, 88 L.Ed.2d 814 (1986) (Rule 8(b)); *United States v. Werner*, 620 F.2d 922, 926 & n. 5 (2d Cir.1980); *United States v. Granello*, 365 F.2d 990, 995 (2d Cir.1966), *cert. denied*, 386 U.S. 1019, 87 S.Ct. 1367, 18 L.Ed.2d 458 (1967). If joinder should not have been permitted, a conviction must be reversed, unless failure to sever was harmless error. *Lane*, 106 S.Ct. at 730–32; *Werner*, 620 F.2d at 926; *Granello*, 365 F.2d at 995.

Rule 8(a) permits joinder of *offenses* against a single defendant in three circumstances: offenses may be joined in a single indictment when they are (1) "based on the same act or transaction," or (2) based "on two or more acts or transactions connected together or constituting parts of a common scheme or plan," or (3) "of the same or similar character." Fed.R.Crim.P. 8(a). Each of these tests for when offenses may be tried together reflects a policy determination that gains in trial efficiency outweigh the recognized prejudice that accrues to the accused. *See Werner*, 620 F.2d at 929.

Rule 8(b) permits joinder of *defendants* "if they are alleged to have participated in the same act or transaction or in the same series of acts or transactions constituting an offense or offenses." Fed.R.Crim.P. 8(b). Unlike Rule 8(a), Rule 8(b) does not permit joinder of defendants solely on the ground that the offenses charged are of "the same or similar character." Thus, though both subdivisions of Rule 8 focus on the nature of the acts constituting the alleged offenses, 8(b) provides a more restrictive test when multiple defendants are

involved. *See Granello*, 365 F.2d at 993–94.

### 2. *Motion to Sever Decided Under 8(b)*

■ Rule 8 does not explicitly provide a standard that governs when multiple offenses *and* multiple defendants are joined in one indictment. One logical approach would invoke Rule 8(a) when defendants seek severance of *offenses*, which is the case here, and Rule 8(b) when defendants seek severance of *defendants*, which is not this case. We have permitted multiple defendants facing multiple charges to move for either type of severance, but we invoke only Rule 8(b) to test the validity of joinder regardless of which type of severance is sought. As the district court recognized, our cases indicate that " 'when a defendant in a multiple-defendant case challenges joinder of offenses, his motion is made under 8(b) rather than 8(a).' " 652 F.Supp. at 710 (quoting *United States v. Papadakis*, 510 F.2d 287, 300 (2d Cir.), *cert. denied*, 421 U.S. 950, 95 S.Ct. 1682, 44 L.Ed.2d 104 (1975)); *see United States v. Turbide*, 558 F.2d 1053, 1061 n. 7 (2d Cir.), *cert. denied*, 434 U.S. 934, 98 S.Ct. 421, 54 L.Ed.2d 293 (1977); 1 C. Wright, *Federal Practice and Procedure* § 144, at 494 (2d ed. 1982). The effect of construing Rule 8 in this fashion is that multiple defendants cannot be tried together on two or more "similar" but unrelated acts or transactions; multiple defendants may be tried together only if the charged acts are part of a "series of acts or transactions constituting an offense or offenses." *See* 1 C. Wright, *supra*, § 144, at 508–09.

Sound policy reasons underlie this distinction. The use of Rule 8(a) to join offenses against a single defendant inevitably involves some danger of prejudice. *See Werner*, 620 F.2d at 929 (substantial prejudice must be shown before severing trials under Rule 14 because Rule 8 authorizes some prejudice). Despite this potential for unfairness, "Congress has authorized consolidation in the belief that public considerations of economy and speed outweigh possible unfairness to the accused." *United States v. Smith*, 112 F.2d 83, 85 (2d Cir. 1940) (commenting on former 18 U.S.C. § 557, which is substantially restated by Rule 8(a)); *see United States v. Barrett*, 505 F.2d 1091, 1106 (7th Cir.1974) ("Obviously any adding of offenses to others is prejudicial to some extent."), *cert. denied*, 421 U.S. 964, 95 S.Ct. 1951, 44 L.Ed.2d 450 (1975). Rule 8(b) reflects a similar policy. Juxtaposing these two rules, the District of Columbia Circuit summarized them, stating

> When similar but unrelated offenses are jointly charged to a single defendant, some prejudice almost necessarily results, and the same is true when several defendants are jointly charged with a single offense or related offenses. Rule 8(a) permits the first sort of prejudice and Rule 8(b) the second. But the Rules do not permit cumulation of prejudice by charging several defendants with similar but unrelated offenses.

*Cupo v. United States*, 359 F.2d 990, 993 (D.C.Cir.1966) (footnote omitted), *cert. denied*, 385 U.S. 1013, 87 S.Ct. 723, 17 L.Ed.2d 549 (1967). Thus, multiple defendants may be charged with and tried for multiple offenses only if the offenses are related pursuant to the test set forth in Rule 8(b), that is, only if the charged acts are part of a "series of acts or transactions constituting ... offenses."

### 3. *Application of 8(b)*

■ As the district court recognized, " 'tax counts can properly be joined with non-tax counts where it is shown that the tax offenses arose directly from the other offenses charged.' " 652 F.Supp. at 711 (*quoting United States v. Kopituk*, 690 F.2d 1289, 1313 (11th Cir.1982), *cert. denied*, 461 U.S. 928, 103 S.Ct. 2089, 77 L.Ed. 2d 300 (1983)). The most direct link possible between non-tax crimes and tax fraud is that funds derived from non-tax violations either are or produce the unreported income. *See United States v. Kenny*, 645 F.2d 1323, 1344 (9th Cir.) ("[T]he tax evasion charges ... arose directly and solely out of unreported income flowing from the illicit contracting activities."), *cert. denied*, 452 U.S. 920, 101 S.Ct. 3059, 69 L.Ed.2d 425 (1981). However, if the character of the funds derived do not convince us of the

benefit of joining these two schemes in one indictment, other overlapping facts or issues may.

In this case, the funds that formed the basis of the unreported income, with one exception, were not derived directly from the Compumeter scheme. The only evidence of a direct connection is that Turoff accepted two $15,000 payments from Lee in 1984 for his role in the Compumeter scheme. These funds were part of the 1984 closing balance in his Hyfin account that earned $4,695.19 of unreported interest. As for the Silvers, the government conceded before trial that they were "charged with failing to report interest income derived from sources other than the scheme charged in the mail fraud counts." *United States v. Turoff*, No. 86 Cr. 00422, *supra*. For this reason, identity of funds derived from the Compumeter conspiracy and those funds unreported in the tax fraud schemes does not provide the essential connection for joinder under 8(b).

Yet, there is a key link between the two offenses—one scheme stemmed from the other—and that link provides a sound basis for joinder under Rule 8(b). Appellants and their cohorts manipulated the Hyfin accounts simultaneously to advance the Compumeter scheme and to accumulate unreported income. The acts involved in each scheme have more than a temporal and spatial relationship. *See United States v. Jackson*, 562 F.2d 789, 796 (D.C. Cir.1977). Significantly, the tax fraud hinged on the fraudulent activities taken to advance the Compumeter conspiracy. Consequently, the proof of one scheme is indispensable for a full understanding of the other.

A *quid pro quo* was exchanged between these participants, each giving something of value to enhance the Compumeter mail fraud scheme with the expectation of some financial benefit in return. And these financial benefits were part and parcel of the tax fraud. *Cf. United States v. Korfant*, 771 F.2d 660, 663 (2d Cir.1985) (distinct unrelated conspiracies for double jeopardy purposes where success or failure of one is independent of the corresponding success or failure of the other). From the inception of his relationship with Lee, Turoff's budding misuse of his position as Taxi Commission Chairman and his unreported Hyfin account income went hand in hand. For instance, Lee reduced the interest rate on several of Turoff's loans in exchange for a promise from Turoff that Hyfin would handle exclusively the financing of Compumeter purchases. Again, for example, Harriet Silver opened eight Hyfin accounts for the express purpose of allowing Lee to funnel into them loan proceeds involved in the Compumeter scheme. And, at the same time, the Silvers opened the Hyfin accounts used to commit the tax fraud. Thus, the Hyfin accounts were used to facilitate the personal and financial relationships that enabled the Compumeter scheme to proceed. Although the actual unreported income was largely (in Turoff's case) or wholly (in the Silvers' case) earned from deposits unrelated to the Compumeter scheme, these accounts served in some measure as a tie connecting appellants to each other, to Lee, and to both schemes. Lee, of course, was the crucial figure overseeing the manipulation of the Hyfin bank accounts, and it was these accounts that served as the channels for illegal activity.

In sum, applying a commonsense rule to these facts, we conclude that a reasonable person would easily recognize the common factual elements that permit joinder of the mail fraud charges and the tax fraud charges in one indictment. Therefore, the charges were properly joined under Rule 8(b).

### B. Other Challenges to the Convictions

■ Appellants contend that the evidence was not sufficient for a jury to find that each defendant omitted the specified income—over $19,000 in four years for Turoff and nearly $7,000 in 1984 for the Silvers—with specific intent to defraud as required under 26 U.S.C. § 7206(1). While conceding that the relevant income was not reported, appellants contend that the only conclusion a reasonable jury could reach is that each defendant was unaware that the income was taxable.

In light of the testimony of Lee, the activity in the relevant accounts, Turoff's existing IRA account, Alan Silver's existing pension plan, and each defendant's financial and business sophistication, all of which was submitted to the jury, we conclude that the evidence was sufficient to demonstrate that each defendant knowingly and intentionally committed tax fraud by omitting income produced from deposits in Hyfin accounts. *See Jackson v. Virginia,* 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979) (jury's verdict must be sustained if *"any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt"). This challenge to the convictions is without merit.

■ Appellants also attack their convictions of conspiracy to commit tax fraud (Count Thirteen) on two grounds. First, they maintain that the evidence was insufficient to establish the existence of a tax conspiracy between Lee, Turoff, and the Silvers. Second, they contend that, at best, the evidence proved multiple conspiracies—one between Lee and Turoff and one between Lee and the Silvers—and not the single conspiracy charged in Count Thirteen.

The defense argument at trial and on appeal is that each defendant made individual determinations to open the Hyfin accounts, deposit funds, and file tax returns without reporting Hyfin-generated interest. The only other possible conclusion a reasonable juror could reach, appellants argue, is that Lee agreed independently with Turoff and with the Silvers not to report or declare the income. Concededly, the fact that each appellant omitted certain Hyfin-generated income on tax returns does not demonstrate the agreement or the overt acts necessary to establish a conspiracy. *See United States v. Rosenblatt,* 554 F.2d 36, 42 (2d Cir.1977). In short, appellants argue that the government proved no agreement, nor any acts in furtherance of any agreement, to omit interest income on federal tax returns and that the evidence demonstrated only parallel behavior in separate years.

The government responds that the evidence disclosed "a common conspiratorial thread" running throughout Turoff's and the Silvers' tax fraud conspiracy with Lee. *United States v. Murray,* 618 F.2d 892, 902 (2d Cir.1980). The issue of whether the government proved the conspiracy or conspiracies alleged in the indictment is usually a question of fact submitted to the jury. *Id.; United States v. Armedo–Sarmiento,* 545 F.2d 785, 789 (2d Cir.1976), *cert. denied,* 430 U.S. 917, 97 S.Ct. 1330, 51 L.Ed. 2d 595 (1977); *United States v. Finkelstein,* 526 F.2d 517, 522 (2d Cir.1975), *cert. denied,* 425 U.S. 960, 96 S.Ct. 1742, 48 L.Ed.2d 205 (1976). We believe that in light of Turoff's initial arrangement with Lee in 1979, Turoff's introduction of Alan Silver to Lee in 1983, Silver's request for the same "deal as Jay [Turoff]," the defendants' strikingly parallel behavior, and the creation of the Compumeter scheme, a rational juror could link Turoff and the Silvers together in a single conspiracy. Additionally, the jury was thoroughly and properly instructed on the single versus multiple conspiracies issue. Consequently, appellants' tax fraud conspiracy convictions under Count Thirteen do not warrant reversal.

■ Appellants also assert the trial court improperly limited the cross-examination of Edmund Lee concerning Hyfin's reporting practices and IRS agent Marlowe concerning taxpayer confusion regarding tax returns. The trial court has "broad discretion over the scope of cross-examination" which is seldom disturbed on appeal. *United States v. Bari,* 750 F.2d 1169, 1178 (2d Cir.1984), *cert. denied,* 472 U.S. 1019, 105 S.Ct. 3482, 87 L.Ed.2d 617 (1985). The record reveals that the defense theory was adequately presented to the jury and that the trial court's limitations on cross-examination of these two witnesses did not constitute an abuse of its discretion.

■ Last, Turoff maintains that the trial court improperly admitted as proof of his intent to defraud the government on his personal tax returns evidence concerning a secret corporate account maintained by Turoff in which he concealed corporate reve-

nues from the IRS. The testimony of Turoff's accountant and the information revealed by the corporate account proved that Turoff did commit the corporate tax fraud. Fed.R.Evid. 404(b) authorizes the use of proof of previous crimes to show intent to commit the charged offense, and any possible prejudice warranting exclusion under Fed.R.Evid. 403 was cured by the cautionary jury instructions.

## CONCLUSION

For the above reasons, the judgments of conviction are affirmed.