192

UNITED STATES of America

v.

William GREER, a/k/a "Thomas William Dodds," Stephen Hutchins, Thomas Cook, a/k/a "George Wright," Gregory Stevens, Martin Scott, and Glen Koski, Defendants.

No. 2:95–CR–72.

United States District Court, D. Vermont.

March 20, 1997.

Robert Francis O'Neill, Gravel & Shea, Burlington, VT, Robert Kalina, Rubin & Bailin, New York City, for William Greer.

Mark Alan Kaplan, Jarvis & Kaplan, Burlington, VT, for Stephen Brent Hutchins.

Bradley Specht Stetler, Stetler & Allen, Burlington, VT, for Thomas Cook.

Mark John Keller, Cain & Keller, Burlington, VT, for Gregory Stevens.

Richard C. Bothfeld, Bothfeld & Volk, P.C., Burlington, VT, for Gary Norman Peryea.

Robert Andres, Burlington, VT, for William Carr.

David J. Williams, Sleigh & Williams, St. Johnsbury, VT, for Martin Scott.

Barry Edward Griffith, Griffith & Lundeen, P.C., Rutland, VT, for Claire Cunningham.

Paul S. Volk, Blodgett, Watts & Volk, Burlington, VT, for Joseph Desautel.

Martin A. Maley, Kissane Associates, St. Albans, VT, for Glen Koski.

Thomas D. Anderson, David V. Kirby, Asst. U.S. Attys., District of Vermont, Burlington, VT, for U.S.

## SUPPLEMENTAL RULING ON MOTION TO EXCLUDE VIDEOTAPE AND RELATED TESTIMONY and ORAL MOTIONS FOR SEVERANCE

SESSIONS, District Judge.

On March 6, 1997, Defendant Greer moved to exclude a videotape of his negotiations concerning purchase of a quantity of marijuana in Maine in 1986 (Paper 343). Greer filed supplemental briefing seeking dismissal of Counts 1 and 2 on double jeopardy grounds and exclusion of the evidence under both the collateral estoppel doctrine and Fed.R.Evid. 403 (Paper 361). All defendants joined in the motion. Defendants Stevens, Scott, Koski and Cook also requested that their cases be severed if the Court were to admit the videotape evidence.

The Court refused to dismiss counts on double jeopardy grounds, or to find that the government was collaterally estopped from introducing the videotape evidence (Paper 362). The Court reserved decision, however, on the Rule 403 and severance issues. Furthermore, on March 18, 1997, Martin Scott filed a Motion in Limine to Exclude Evidence (Paper 365) in which he seeks a Rule 104(b) hearing regarding the admissibility of the videotape. This ruling addresses these outstanding issues.

### I. *Admissibility of the videotape evidence.*

The Court summarized the contents of the videotape in its Ruling on the Motion to Dismiss, familiarity with which is assumed. Generally, Greer's statements can be categorized as: (1) admissions concerning marijuana distribution in Canada during the period covered by the instant indictment; (2) discussion of large scale drug transactions which show a familiarity with such transactions; and (3) negotiations for the purchase of quantities of marijuana.

The government argues that the videotape is admissible as either: (1) statements of a co-conspirator during and in furtherance of the conspiracy under Fed.R.Evid. 801(d)(2)(E); (2) prior bad acts under Fed. R.Evid. 404(b) used to prove knowledge, motive, intent, preparation or plan; or (3) admissions of a defendant under Fed.R.Evid. 801(d)(2)(A).

■ Greer's statements concerning distributing drugs in Canada, the types and quantities of those drugs, and his familiarity with Canadian exchange rates are admissions to conduct charged in the instant indictment. These statements are particularly relevant to Counts 1, 2, and 3. They are admissible against Greer pursuant to Rule 801(d)(2)(A).

■ The videotape evidence is admissible against Greer under Rule 404(b). Negotiations for the purchase of drugs, including encouraging prospective sellers to distribute to him by describing his experience in the trade, constitute evidence of other wrongs under Rule 404(b) and are relevant for purposes other than propensity to commit this kind of crime. These statements tend to prove Greer's knowledge, intent, plan, and motive.

Rule 801(d)(2)(E) permits the introduction against all members of a conspiracy any statements made by members of the conspiracy which were made during and in furtherance of the conspiracy. Prior to introduction of such statements, the proponent of the evidence must establish the existence of the conspiracy, that the party who made the statement was an active member, and that the statement was made during the conspiracy and to further its goals or objectives.

The government proffers that Greer was a member of the conspiracy in 1986 when the videotape was taken. One objective of the conspiracy was for Greer and/or others to purchase marijuana from sources outside the conspiracy for distribution by the co-conspirators. Under this theory, Greer's negotiations and statements concerning his history of distributing drugs in Canada were in furtherance of the conspiracy.

It is impossible for the Court to determine pretrial whether the government can establish the existence of a conspiracy during 1986, together with its objective to have Greer purchase drugs for distribution by co-

conspirators. The Court will review the evidence prior to introduction of the videotape to assess whether the government has established the existence and relevant objectives of the conspiracy. Assuming that the government can establish those facts, the videotape will be admissible under Rule 801(d)(2)(E) as statements by a co-conspirator during and in furtherance of the conspiracy and may be used against all defendants who are shown to be members of the conspiracy.

## II. *Rule 403*

Assuming that the videotape is admissible under any or all of these theories, the defendants ask the Court to bar introduction of the videotape under Rule 403. Rule 403 permits the Court to exclude otherwise admissible evidence when its unfair prejudicial impact "substantially" outweighs its probative value. The statements at issue differ both with regard to prejudicial impact and probative value. The Court must therefore conduct the Rule 403 balancing test as to each type of statement.

■ The probative value of Greer's statements concerning his involvement in distributing marijuana in Canada is extremely high. Greer's admissions are to crimes covered directly by the instant indictment. Discussions about connections to Canada, his understanding of Canadian exchange rates and the amounts and types of drugs distributed in Canada are particularly relevant. The probative value is not substantially outweighed by the danger of unfair prejudice, and the statements are admissible against Greer.

Other defendants have argued that introduction of Greer's admissions would be highly prejudicial to their cases. However, there are a number of factors which tend to minimize the prejudicial impact. At this point, the statements are not admissible against the other defendants, and the Court hereby instructs that the government may not attribute these statements to the other defendants during opening statements. Rather, the statements are admitted pursuant to Rule 801(d)(2)(A), thereby permitting an instruction that the statements are not evidence against any co-conspirators. The statements themselves mention only a "John" and do not implicate any of the other defendants. The Court will conduct a hearing under Fed. R.Cr.P. 104(b) prior to admission of the videotape to assess whether it is admissible against Greer's co-defendants under Rules 801(d)(2)(E) and 403.

Greer's negotiations for the purchase of marijuana are clearly probative. The videotape reveals Greer's level of sophistication in large quantity drug transactions and establishes his involvement in the marijuana trade during the period of the conspiracy. The negotiations may confirm Greer's involvement in the marijuana trade during the time period covered by the instant indictment. The fact that he was observed negotiating over the purchase of large quantities is particularly relevant to the CCE count. However, the government has substantial evidence linking Greer to the distribution of marijuana during the relevant periods, and this evidence may be somewhat cumulative.

Evidence of Greer's negotiations is also highly prejudicial. Admission of such evidence almost necessarily requires Greer to respond, resulting in a virtual retrial of the Maine indictment. Although the government seeks to introduce only the negotiations, and not the nature of the charges or the verdict, the acquittal on the conspiracy charge and the directed verdict on the attempted possession with intent to distribute make this evidence more suspect. Introduction of the negotiations may deflect the jury's attention to charges for which he was acquitted, leading both to confusion in the minds of jurors and prejudice to Greer.

The Court cannot adequately balance under Rule 403 prior to trial. Although the evidence of these negotiations is obviously highly prejudicial, it is necessary to put the government's proffer in the context of the evidence as it is elicited at trial. In particular, the Court must assess the cumulative effect of this evidence. The Court hereby instructs the government not to discuss the Maine negotiations in its opening statement. Evidence of the Maine negotiation will not be admitted without a prior ruling allowing the

government to introduce this evidence at trial.

Greer's statements which demonstrate familiarity with large scale marijuana transactions are also somewhat cumulative. The government has proffered the testimony of several witnesses who will confirm Greer's involvement in such transactions. Again, the Court finds that the prejudicial impact of such evidence is substantial, but will apply Rule 403 to this evidence in the context of the trial.

Based upon the findings above, the Court directs the government not to discuss those portions of the videotape which involve the actual negotiation for the purchase of marijuana, or general comments demonstrating familiarity with large-scale drug transactions. The Court will consider whether this evidence is to be admitted or excluded at the point the government seeks its admission at trial. Greer's admissions concerning drug transactions in Canada, his knowledge of Canadian money exchanges, and related topics may be introduced by the government as evidence against Greer, and therefore discussed in its opening statement, although the government may not discuss the relevance of those admissions to other defendants in its opening statement. If the government can establish the existence of a conspiracy alleged in the indictment, and that Greer's videotaped statements were made in furtherance of the conspiracy, then the Court will weigh whether the statements will be admitted against Greer's co-defendants, assuming their participation in the conspiracy has been shown at the point the government seeks admission of the evidence.

### III. *Severance*

■ Defendants made or renewed motions to sever based upon the introduction of the videotape. They argue that the videotape is sufficiently prejudicial to justify separate trials. For the reasons cited below, the Court denies the severance motions.

Multiple defendants may be tried together "if the charged acts are part of a 'series of acts or transactions constituting an offense or offenses.'" *United States v. Turoff*, 853 F.2d 1037, 1043 (2d Cir.1988) (citing 1 C. Wright, *Federal Practice and Procedure*, § 144, at 508–09 (2d Ed.1982). Under Fed. R.Cr.P. 14, a defendant bears the burden of demonstrating that joinder is so prejudicial as to amount to a miscarriage of justice. *United States v. Cervone*, 907 F.2d 332, 341 (2d Cir.1990).

At the outset, severance would have a significant impact upon court resources. The current trial is estimated to take two months to try. Severed defendants would require virtually a complete duplication of trials, so that up to four months of court time would have to be expended. Further, severance would be highly prejudicial to the government, since many if not all of their witnesses, including many residents of foreign countries, would have to testify more than once.

Despite arguments of defense counsel, prejudice by introduction of Greer's admissions to Canadian drug transactions is not severe. Greer's statement does not identify any of the co-defendants. In fact, the statement mentions a "John" as involved with Greer. At this point, the evidence is not admissible against the other defendants. The court will issue limiting instructions if requested. Finally, if the defendants need to put the statements in context, to include the acquittal, the Court will address that issue upon request.

Based upon the above findings, the Court denies the defendants' oral motions for severance.

### IV. *Scott's Motion in Limine to Exclude Evidence*

Martin Scott filed a motion in limine to exclude the videotape of Greer's discussions for the purchase of marijuana in Maine (Paper 365). He seeks a Rule 104(b) hearing prior to opening statements to address whether the government can prove Greer's statements were admissible as admissions or as statements of co-conspirators in furtherance of the conspiracy.

The Court has received a proffer of evidence from the government and heard argument from all parties concerning the admissibility of this evidence. The Court has addressed the motion in its findings above.

Greer's apparent admissions to criminal behavior in Canada are admissible against him under Rule 801(d)(2)(A) and the parties may address that evidence as it relates strictly to Greer in opening statements. Whether those statements can be used against other defendants is dependent upon the government's proof at trial. The government has been instructed not to address those statements as being used against the other defendants in opening statements. Further, the Court has also instructed the government not to mention those portions of the videotape which involved negotiations for the purchase of marijuana or general comments concerning the familiarity with large-scale drug transactions in opening statements, pending a Rule 104(b) hearing during trial. Consequently, Scott's motion is denied. A Rule 104(b) hearing will be conducted during trial prior to the government's effort to introduce such statements.