**UNITED STATES of America**

v.

**Justin A. VOLPE, Thomas Bruder, Charles Schwarz, Thomas Wiese, Michael Bellomo, Defendants.**

**No. CR 98–196(S–2).**

United States District Court, E.D. New York.

March 3, 1999.

**208**

Zachary W. Carter, United States Attorney, Eastern District of New York, Brooklyn, NY (Loretta E. Lynch, Alan Vinegrad, and Kenneth P. Thompson, Assistant United States Attorneys, of counsel), for U.S.

Marvyn M. Kornberg, Kew Gardens, New York, for defendant Justin A. Volpe.

Stephen C. Worth, Hesslon, Bekoff & Worth, Mineola, New York, for defendant Charles Schwarz.

Stuart London, White Plains, New York, for defendant Thomas Bruder.

Russell M. Gioiella, Litman, Asche, Lupkin & Gioiella, New York City, for defendant Thomas Wiese.

Joseph Tacopina, Altchiler & Tacopina, New York City, for defendant Thomas Wiese.

John D. Patten, New York City, for defendant Michael Bellomo.

MEMORANDUM AND ORDER

NICKERSON, District Judge.

The superseding indictment in this case contains thirteen counts and makes various charges against the five defendants, four New York City police officers and one police sergeant.

Count One charges that four defendants, Police Officers Justin A. Volpe, Thomas Bruder, Charles Schwarz, and Thomas Wiese, conspired to deprive Abner Louima of his federal civil rights by assaulting him while handcuffed and in police custody in a police car and in a 70th Precinct restroom. Counts Two through Four are substantive counts alleging assaults in a police car and an assault in the restroom.

Count Five charges Police Sergeant Michael Bellomo as an accessory after the fact by assisting the officers to hinder and prevent their apprehension and trial. Count Nine charges Volpe with witness tampering by threatening Louima to prevent him from telling a United States law enforcement officer of an assault. Count Ten accuses Bellomo of making a false statement to the Federal Bureau of Investigation that he had authorized an arrest of Louima. Count Thirteen alleges that Bruder, Schwarz, and Wiese conspired to obstruct justice by providing false statements to the Kings County District Attorneys Office, the Police Department, and the Federal Bureau of Investigation in an effort to exculpate Schwarz as to the alleged assault of Louima in the restroom.

Count Six charges Volpe and Bellomo with conspiring to deprive Patrick Antoine of his federal civil rights by unlawfully assaulting him and then falsely arresting him to conceal the assault. Counts Seven and Eight allege substantive counts charging the assault and false arrest of Antoine. Count Eleven charges Bellomo with falsely stating to the Federal Bureau of Investigation that he saw Patrick Antoine charge into Volpe. Count Twelve charges Bruder with a similar false statement.

On March 2, 1999 the government moved to dismiss Count Twelve. The court will grant this motion.

The remaining charges in the superseding indictment can be identified as follows:

## LOUIMA CHARGES

| COUNT | CHARGE | DEFENDANTS |
|---|---|---|
| 1 | CONSPIRACY TO DEPRIVE CIVIL RIGHTS (ASSAULTS) | VOLPE, BRUDER, SCHWARZ, AND WIESE |
| 2 | DEPRIVATION OF CIVIL RIGHTS (CAR ASSAULT # 1) | SCHWARZ AND WIESE |
| 3 | DEPRIVATION OF CIVIL RIGHTS (CAR ASSAULT # 2) | VOLPE, BRUDER, SCHWARZ, AND WIESE |
| 4 | DEPRIVATION OF CIVIL RIGHTS (RESTROOM ASSAULT) | VOLPE AND SCHWARZ |
| 5 | ACCESSORY AFTER THE FACT (CAR ASSAULT # 2) | BELLOMO |
| 9 | OBSTRUCTION OF JUSTICE— WITNESS TAMPERING | VOLPE |
| 10 | FALSE STATEMENTS (LOUIMA ARREST) | BELLOMO |
| 13 | CONSPIRACY TO OBSTRUCT JUSTICE (RESTROOM ASSAULT) | BRUDER, SCHWARZ AND WIESE |

## ANTOINE CHARGES

| COUNT | CHARGE | DEFENDANTS |
|---|---|---|
| 6 | CONSPIRACY TO DEPRIVE CIVIL RIGHTS (FALSE ARREST) | VOLPE AND BELLOMO |
| 7 | DEPRIVATION OF CIVIL RIGHTS (ASSAULT) | VOLPE |
| 8 | DEPRIVATION OF CIVIL RIGHTS (FALSE ARREST) | VOLPE AND BELLOMO |
| 11 | FALSE STATEMENTS (ANTOINE ARREST) | BELLOMO |

The court will now decide the numerous motions made by the defendants.

### I. Motions for Severance

Each of the five defendants seeks to sever his case from the cases of one or more of his co-defendants or to sever some of the charges. The government consents, and defendants do not object, to the severance of Count Thirteen. Otherwise, the government opposes defendants' motions. The court will sever Count Thirteen.

Persons indicted together for crimes arising out of a similar series of acts or involving substantially the same evidence should generally be tried together. *See United States v. Corr*, 543 F.2d 1042, 1052 (2d Cir.1976). Joint trials allow witnesses and the court to avoid the burden of successive trials on the same issues and, in the case of complex cases, "permit the jury to see a comprehensive presentation of the entire enterprise and the role played by each participant." *United States v. Persico*, 621 F.Supp. 842, 852 (S.D.N.Y.1985); *see United States v. Lyles*, 593 F.2d 182, 191 (2d Cir.1979).

Although there is a "preference" for joint trials of defendants indicted together, *Zafiro v. United States*, 506 U.S. 534, 537, 113 S.Ct. 933, 937, 122 L.Ed.2d 317 (1993), Rule 14 of the Federal Rules of Criminal

Procedure provides that where it appears joinder may prejudice a defendant or the government, the court may sever counts or defendants. That rule states in relevant part:

If it appears that a defendant or the government is prejudiced by a joinder of offenses or of defendants in an indictment or information or by such joinder for trial together, the court may order an election or separate trials of counts, grant a severance of defendants or provide whatever other relief justice requires.

Such a severance is justified only where joinder would "compromise a specific trial right of one of the defendants, or prevent the jury from making a reliable judgment about guilt or innocence." *Zafiro*, 506 U.S. at 539, 113 S.Ct. at 938. Even if defendants can establish prejudice, Rule 14 does not require severance but "leaves the tailoring of the relief to be granted, if any, to the district court's sound discretion." *Id.* at 538–39, 113 S.Ct. at 938.

### (i) Volpe's Motion

Volpe seeks severance from all of his codefendants except Bellomo on the ground that his defense and those of other defendants are mutually antagonistic. He cites (1) Schwarz's televised statement on the television show *60 Minutes* that Louima was assaulted in the restroom in the manner described by Louima; (2) Schwarz's and Wiese's assertions that they are not guilty of the car assault charges (Counts Two and Three); (3) Bruder's statement to federal agents implicating Volpe in a confrontation with Louima outside of the Club Rendezvous and in an assault of Louima in the restroom; and (4) Wiese's statement to the Kings County District Attorney's Office on August 17, 1997 implicating Volpe in the restroom assault.

A "mutually antagonistic" defense is one creating a conflict so irreconcilable that acceptance of one defendant's defense will lead the jury to convict the other. *See United States v. Salameh*, 152 F.3d 88, 116

(2d Cir.1998). "A simple showing of some antagonism between defendants' theories of defense does not require severance." *United States v. Carpentier*, 689 F.2d 21, 27–28 (2d Cir.1982).

As *Zafiro v. United States* makes clear, "[m]utually antagonistic defenses are not prejudicial per se." 506 U.S. at 538, 113 S.Ct. at 938. But such defenses may violate a specific trial right of a defendant by compromising the opportunity to present an individual defense. There are only a few reported cases where the facts establish the existence of mutually antagonistic defenses between co-defendants. *See, e.g., United States v. Tootick*, 952 F.2d 1078 (9th Cir.1991); *United States v. Romanello*, 726 F.2d 173 (5th Cir.1984). Such a case is one where, in effect, a defendant's counsel becomes a "second prosecutor," who "in order to zealously represent his client . . . [does] everything possible to convict the other defendant." *Tootick*, 952 F.2d at 1082. The antagonism in the defenses thus may inhibit the jury from evaluating the evidence against each defendant based on that defendant's own acts and statements, before concluding the prosecution has proved its case beyond a reasonable doubt as to each defendant.

Volpe does not articulate any specific prejudice that might arise from the allegedly antagonistic defenses. He simply states that his co-defendants have made out-of-court statements suggesting they have defenses he alleges are antagonistic to his defense. He claims this is a sufficient ground for severance. This is not the law.

All of these statements if offered at trial would be admissible against the defendants making them. But unless some exception to the hearsay rule applies, they would not be admissible against others and would be subject to the rules developed under *Bruton v. United States*, 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476 (1968).

Moreover, Volpe has not articulated any defense that would be mutually antagonis-

tic with any of his codefendants' alleged defenses. Even if some inconsistences are present in the defenses, the court can correct through instructions any potential prejudice.

■ Volpe first argues that his and Schwarz's defenses to the bathroom assault charge are mutually antagonistic because Schwarz allegedly said on television that he believed that Louima had been sexually assaulted in the manner described by Louima. Such a belief is hardly evidence. In any event, Schwarz allegedly stated also that he did not know who committed the assault and that he did not participate in it. Even if this statement were admitted, the jury could believe that Schwarz did not participate in the assault without concluding that Volpe did participate. There is no irreconcilable conflict or prejudice arising from Schwarz's statement.

■ Volpe's defenses to the two alleged car assaults are not mutually antagonistic to Schwarz's and Wiese's defenses. Volpe is not charged in the first car assault (Count Two). The government states that it will not offer proof that Volpe was an unindicted participant in that assault. Volpe does not explain what he thinks Schwarz, Bruder, and Wiese will offer as a defense to the second car assault nor why his defense will be mutually antagonistic. Apparently those three will argue that there was no such assault (as Wiese has previously stated), a defense not inconsistent with a claim by Volpe that he did not commit such an assault.

■ Volpe argues that two sets of Bruder's statements made pursuant to a proffer agreement are antagonistic to his defense: (1) statements implicating Volpe in the initial confrontation outside the Club Rendevous leading to Louima's arrest, and (2) statements implicating Volpe in the restroom assault of Louima. The first set of statements do not appear to inculpate Volpe but seem to exculpate him. Moreover, in conformity to the proffer agree-

ment with Bruder, the government presumably was going to use the statements only to prove Count Twelve against Bruder. As stated above, that count will be dismissed.

Volpe's motion for severance based on the second set of statements is without merit. Those statements relate to matters with which Bruder is not charged. There is no basis for Bruder to offer the statements on his case or as inculpatory of Volpe.

Similarly, while Volpe argues that Wiese's statements to the Kings County District Attorney's Office implicating Volpe in the alleged restroom assault of Louima are antagonistic to his defense, there is no basis for Wiese to offer them in his defense or as inculpatory of Volpe. Moreover, Wiese is not even charged with the restroom assault.

Volpe is not entitled to a severance.

*(ii) Schwarz's Motion*

■ Schwarz seeks severance from Wiese and Bruder alleging that otherwise he will be denied his constitutional right to call witnesses and present a complete defense. He states that at a separate trial, he will seek to call Wiese and Bruder as witnesses to support a defense that he did not assault Louima either in the patrol car or the restroom. Wiese has apparently stated he did not see Schwarz assaulting Louima in either of those places. Bruder has allegedly stated he did not see Schwarz go with Louima to the restroom.

In deciding these claims the court will consider: (1) the sufficiency of the showing that the co-defendant would testify at a severed trial and waive his Fifth Amendment privilege; (2) the degree to which the exculpatory testimony would be cumulative; (3) the counter arguments of judicial economy; and (4) the likelihood that the testimony would be subject to substantial, damaging impeachment. These factors are not exclusive. *See United States v. Finkelstein*, 526 F.2d 517, 524 (2d Cir. 1975).

■ These factors weigh against Schwarz's motion. First, he has not made a sufficient showing that Bruder and Wiese would waive at a separate trial their Fifth Amendment privilege and testify on Schwarz's behalf. Bruder and Wiese have not submitted affidavits to that effect. *See United States v. Turoff*, 652 F.Supp. 707, 712 (E.D.N.Y.1987) (a co-defendant's "proffer of testimony, in the absence of an affidavit stating his willingness to take the stand, cannot create much confidence that he actually would testify were the trials severed."). In addition, the alleged willingness of Bruder and Wiese to testify for Schwarz is conditioned on their being tried first, thus drawing into question their good faith. *See United States v. Bari*, 750 F.2d 1169, 1177 (2d Cir.1984); *Turoff*, 652 F.Supp. at 713.

Moreover, it appears that any such testimony by Bruder and Wiese will be subject to substantial impeachment.

In addition, Schwarz asks for severance on the ground that the court's decision to empanel an anonymous and partially sequestered jury will prejudice him, whereas if he were tried alone, he would not incur this prejudice. The fact that a jury is anonymous and partially sequestered does not mean it cannot be fair and impartial. *See, e.g., United States v. Amuso*, 21 F.3d 1251, 1264 (2d Cir.1994). Schwarz is not entitled to severance.

### (iii) Bruder's Motion

■ Bruder moves for severance from Volpe on the ground that at a joint trial the jury will attribute Volpe's acts to him. The claim is speculative. Bruder fails to show any genuine risk of prejudicial spillover. The motion is denied.

### (iv) Wiese's Motion

■ Wiese moves for severance from Volpe, Bruder, and Bellomo. Alternatively, he seeks severance of the Louima-related assault counts (Counts One through Four) from the remaining counts (Counts Five through Eleven).

Wiese first argues that his defenses to the assault charges are mutually antagonistic to Volpe's defenses. Volpe and Wiese are charged jointly in only one assault, Count Three. Volpe's apparent defense to that count is that he did not participate in the car assault. That defense does not require a jury finding that Wiese did participate. The jury could believe (as Wiese previously has stated) that the car assault did not occur at all.

■ Wiese next argues that two of Bruder's statements if offered in evidence would incriminate Wiese. These statements are: (1) Bruder's statement to law enforcement officers that he saw Wiese and Volpe walking Louima toward the rear of the stationhouse in the direction of the restroom; and (2) Bruder's statement to Wiese that "I thought we were supposed to be partners" to which Wiese replied, "I told them everything, Tommy, I told them everything."

The government states it will not offer either of these statements during its case-in-chief at the trial of Counts One through Eleven. Of course were Bruder to testify the government could cross-examine him.

Wiese's third argument that severance will somehow serve the interests of judicial economy is without merit and requires no comment.

■ Fourth, Wiese argues that the Louima-related assault counts (Counts One through Four) are improperly joined with the Antoine-related charges because they are wholly unrelated. Rule 8(b) of the Federal Rules of Criminal Procedure states in pertinent part: "[t]wo or more defendants may be charged in the same indictment ... if they are alleged to have participated in the same act or transaction or in the same series of acts or transactions constituting an offense or offenses." That language means that joinder is proper where two or more persons' criminal acts are "unified by some substantial identity of facts or participants, or arise out of a common plan or scheme." *United States*

*v. Cervone,* 907 F.2d 332, 341 (2d Cir.1990) (internal quotations omitted).

Wiese argues that the only factual connection between the two conspiracies (the Louima-related charges and the Antoine-related charges) is that they occurred on the same evening. This statement is not supported by the proof that the government says it intends to offer.

According to the government, the two conspiracies are unified by a substantial identity of facts and participants. The government says it will show that both grew out of the same event, namely, a fight that occurred outside the Club Rendezvous on Flatbush Avenue around 4:00 A.M.; the assaults occurred within less than a block of each other and within moments of each other; the assaults were both motivated by a desire to inflict excessive and unjustified force on the two arrestees; and two of the defendants, Volpe and Bellomo, participated in both assaults. Wiese is charged only in connection with the assaults of Louima. Of course, under Rule 8(b), "all of the defendants need not be charged in each count." Fed.R.Crim.P. 8(b).

Counts One through Four and the Antoine-related charges arise from the same series of acts or transactions, and joinder is proper.

Wiese's motion for severance pursuant to Rule 14 is also unsubstantiated. Wiese argues that he will be "prejudiced" because the jury will unfairly attribute the violation of Antoine's civil rights to him. He has not been indicted in any of the Antoine-related charges. He suggests no basis for the claim, and makes only a conclusory statement that "massive amounts" of evidence relating to the Antoine charges and the obstruction charges will prejudice him. The government says that the quantity of proof of the Louima assaults will far outweigh the proof of the other charges. The court will make clear to the jury that it must consider the case against each defendant separately.

Wiese argues that the Louima-related assault charges (Counts One through Four) and the Louima-related accessory, obstruction, and false statement charges (Counts Five, Nine, and Ten) should be severed pursuant to Fed.R.Crim.P. 8(b) and 14. The court rejects the arguments.

The claims are properly joined under Rule 8(b) because all of the charges are part of the "same series of acts or transactions." The accessory and false statement counts (Counts Five and Ten) charge Bellomo with hindering the prosecution of those, including Wiese, who allegedly assaulted Louima. Plainly these counts are related to the assault charges. So too is the witness tampering count in which Volpe is charged with threatening Louima in order to prevent him from reporting the alleged assault to authorities.

Finally, Wiese argues that severance of Counts One through Four from Counts Five, Nine, and Ten is warranted because it will be "impossible" for the jury to determine whether Wiese assaulted Louima without considering the evidence that Bellomo tried to cover up that assault. It is hard to see why this should be so. The court will charge the jury that it must consider the evidence against each defendant separately.

Wiese's arguments are not persuasive. His motion for severance will be denied

### (v) Bellomo's Motion

Bellomo seeks a severance of the Louima and Antoine-related charges pursuant to Fed.R.Crim.P. 8(b) and 14. Bellomo's motion has no more merit than that of Wiese.

Bellomo provides no reason other than speculation why prejudicial spillover would result from a joint trial. His motion is denied.

### II. Motion To Disqualify Wiese's Attorneys

Both Schwarz and Bruder move to disqualify Wiese's attorneys, Mssrs. Joseph Tacopina and Russell Gioiella, on the

ground that they are witnesses to some of Wiese's out-of-court statements that are exculpatory of Schwarz and Bruder. The statements are contained in a written stipulation signed by the two attorneys and the government. According to the stipulation, Wiese's attorneys told Louima's attorneys that Wiese stated in substance that (1) he did not see Schwarz strike Louima in the police car (Count Two); (2) Schwarz did not go with Louima and Volpe to or inside the restroom (Count Four); (3) there was no assault at the location of the second car stop (Count Three); and (4) Bruder was not present when Volpe escorted Louima into the restroom. Schwarz states that statements one and two exculpate him; Bruder states that statements three and four exculpate him.

Unless these statements by Wiese's lawyers are admissible against Wiese as admissions or against other defendants as against Wiese's interest, the statements are all inadmissible hearsay.

Schwarz and Bruder argue that the statements are admissible under Federal Rules of Evidence 804(b)(3). That rule states that a "statement against interest," defined as "[a] statement which was at the time of its making so far contrary to the declarant's pecuniary or proprietary interest, or so far tended to subject the declarant to civil or criminal liability ... that a reasonable person in the declarant's position would not have made the statement unless believing it to be true," is excepted from the hearsay rules. Moreover, if the "statement tending to expose the declarant to criminal liability ... [is] offered to exculpate the accused," it is not admissible unless "corroborating circumstances clearly indicate the trustworthiness of the statement." Fed.R.Evid. 804(b)(3).

Rule 804(b)(3) is "founded on the commonsense notion that reasonable people, even reasonable people who are not especially honest, tend not to make self-inculpatory statements unless they believe them to be true." *Williamson v. United States*, 512 U.S. 594, 599, 114 S.Ct. 2431, 2435, 129 L.Ed.2d 476 (1994). Because the fact that "a person is making a broadly self-inculpatory confession does not make more credible the confession's non-self-inculpatory parts," *id.*, the court must examine each proposition in a statement to determine whether it was so inculpatory of Wiese as to assure that he thought it was true.

None of Wiese's alleged statements on their face inculpates him. Wiese's first statement reported in the stipulation purportedly demonstrates that he was not near the police car when Louima was allegedly assaulted (Count Two). Wiese allegedly said he left Schwarz and Louima alone in the car and when he returned, Schwarz was "in the back seat on top of Louima," but "Wiese did not see Schwarz strike Louima." The statement, if true, would exculpate Wiese of the criminal charges in Count Two.

The second statement implicates Volpe but in no way inculpates Wiese.

The third statement that there was no assault at the location of the second car stop (Count Three) exculpates, not inculpates, Wiese since it means the assault he is charged with never occurred.

The fourth statement, like the second statement, implicates Volpe but does not inculpate Wiese. Moreover, Bruder is not charged in the restroom assault count. It mystifies the court why he says this statement "exculpates" him.

Schwarz and Bruder do not deny that the four statements are exculpatory or neutral as to Wiese in this case. But they argue that the statements "as a whole" were declarations against Wiese's interests because "they tend to subject him to civil liability" under Counts Four through Eight of the civil complaint filed by Louima against the New York Police Department and others, as well as all five of the defendants in this criminal case. Those civil counts allege that Wiese and others failed to give Louima prompt medical treatment, to protect him while in their

custody, and to intercede on his behalf, thereby depriving him of his First, Fourth, and Fourteenth Amendment rights.

Neither Schwarz nor Bruder elaborate on how each of Wiese's statements would subject him to civil liability under these counts. The statement that Wiese did not see Schwarz strike Louima in the car tends to exculpate Wiese of civil liability because it shows that he was not present when Louima was being assaulted by Schwarz. It is difficult to discern how statements two, three, and four would inculpate Wiese in the civil case.

Not deterred by the self-exculpatory or neutral nature of Wiese's statements, Schwarz and Bruder argue that the statements were nevertheless against Wiese's interest because they expose the fact that "he saw the defendant Volpe and Mr. Louima in the bathroom and did not report it to the proper authorities." According to them, such a failure exposes Mr. Wiese to criminal liability under New York State law and subjects him to departmental sanctions under New York City Police Department Regulations.

This argument has no merit. First, none of Wiese's alleged statements contains an admission by him that he failed to report anything. Second, the mere proximity to a self-inculpatory statement does not make a self-exculpatory or neutral statement admissible under Rule 804(b)(3). *See Williamson*, 512 U.S. at 600, 114 S.Ct. at 2435 ("collateral statements, even ones that are neutral as to interest, . . . should [not] be treated any differently from other hearsay statements that are generally excluded."). Even assuming that the statement "I saw Volpe and Mr. Louima in the bathroom" is inculpatory of Wiese (because it is an implied confession that he did not report the incident promptly), the court concludes that such an implication does not make the four statements admissible.

Third, even if all four of the statements could eventually be used against Wiese as evidence of his failure adequately to intercede on behalf of Louima or timely to report the alleged assaults, the rationale of Rule 804(b)(3) requires that that risk must have been in Wiese's mind at the time he made the statements. In other words, would a reasonable person in Wiese's position have then considered the statements he made to be against his interest?

"[W]hether a statement is self-inculpatory or not can only be determined by viewing it in context." *Williamson*, 512 U.S. at 603, 114 S.Ct. at 2436–37. The circumstances leading to Wiese's statements are these. On November 20, 1997 and November 26, 1997 attorneys representing Wiese met with attorneys representing Louima for the stated purpose of "determining whether Wiese's assertion of innocence relating to the alleged assaults of Abner Louima was consistent with Louima's version of events and, if so, whether Wiese could thereby avoid civil and criminal liability for these alleged assaults." Wiese's statements were those that his counsel attributed to him at a series of carefully planned meetings designed to convince Louima's attorneys that Wiese was not guilty of the alleged assaults. When these meetings took place, Wiese, along with Schwarz, had already been charged by the Kings County District Attorney's Office for assaulting Louima. The civil complaint had not yet been filed.

Schwarz and Bruder do not make any showing that at the time Wiese spoke to his attorneys, he likely was aware that his statements were an implied confession of wrongdoing. Nor do they explain why, in light of the other, far more serious, charges Wiese was facing, he would have considered the net effect of those statements to be against his interest. In other words, a proposition in a statement that has the dual consequence of (1) exculpating a defendant of the most serious charges against him and (2) inculpating him of lesser ones cannot be considered a "statement against interest." So to consider it would turn Rule 804(b)(3) on its

head. Moreover, Wiese's statements do not meet the requirement set forth in the last sentence of Rule 804(b)(3) that "corroborating circumstances clearly indicate the trustworthiness of the statement." The added precaution applies when a statement allegedly against the declarant's criminal interest is offered to exculpate an accused. Its purpose is to circumvent the admission of fabricated statements. *See United States v. Doyle,* 130 F.3d 523, 544 (2d Cir.1997).

The corroborating circumstances here fall far short of the standard. They do not "clearly indicate" that Wiese's statements are trustworthy. He, Schwarz, and Bruder are fellow police officers. Wiese had a significant motive to fabricate his story on Schwarz's and Bruder's behalf to the extent he did not inculpate himself. Moreover, the statements Wiese allegedly made, as memorialized in the stipulation, were carefully crafted declarations divulged to Louima's attorneys for the purpose of exculpating Wiese from criminal and civil liability. This increases the likelihood of fabrication. Bruder and Schwarz have not made the requisite showing of trustworthiness.

Wiese's statements do not qualify under any other hearsay exception. They are not admissible under Fed.R.Evid. 801(d)(2) since they are not being offered against Wiese. Schwarz and Bruder's discussion of Rule 106 is out of place. This rule does not provide for the admission of the underlying hearsay statement.

Finally, the statements are not admissible under Rule 807. Bruder and Schwarz have made no showing that Wiese's statements have the "equivalent circumstantial guarantees of trustworthiness" that statements covered by Rule 803 or 804 have. All three statements were out-of-court, unsworn declarations made by Wiese in order to exculpate himself of serious criminal and imminent civil charges. Statements one and three were self-exculpatory declarations. Statement two was exculpatory of Schwarz, a fellow police officer and Wiese's

partner, without being self-inculpatory. Similarly, statement four was exculpatory of Bruder without inculpating Wiese. The court will not admit Wiese's statements under Rule 807.

### III. Motions for a Change of Venue

All the defendants move for a pre-voir dire change of venue, arguing that pretrial publicity and the "inherent prejudice" that exists against them in this district will deny them due process of law under the Fifth Amendment and their right to trial by an impartial jury under the Sixth Amendment. Volpe, Bellomo, Bruder, and Wiese argue in the alternative for a transfer of venue pursuant to Rule 21(a) of the Federal Rules of Criminal Procedure, and Volpe and Wiese argue for a transfer based on the court's federal supervisory power.

*Constitutional Standard*

■ The Fifth and Sixth amendments to the Constitution guarantee defendants "a fair trial by a panel of impartial, 'indifferent' jurors." *Irvin v. Dowd,* 366 U.S. 717, 722, 81 S.Ct. 1639, 1642, 6 L.Ed.2d 751 (1961). On a motion to transfer venue before jury selection, defendants must make a showing of presumed prejudice, arising when "prejudicial publicity so pervades or saturates the community as to render virtually impossible a fair trial by an impartial jury drawn from that community." *Mayola v. Alabama,* 623 F.2d 992, 997 (5th Cir.1980).

■ The courts have rarely found such prejudice. *Nebraska Press Association v. Stuart,* 427 U.S. 539, 554, 96 S.Ct. 2791, 2800, 49 L.Ed.2d 683 (1976). In only one case has the Supreme Court found presumptive prejudice deriving solely from pretrial publicity. *Rideau v. Louisiana,* 373 U.S. 723, 83 S.Ct. 1417, 10 L.Ed.2d 663 (1963). The Court has not found a single case of presumed prejudice since *Sheppard v. Maxwell,* 384 U.S. 333, 355, 86 S.Ct. 1507, 1518, 16 L.Ed.2d 600 (1966).

In *Rideau*, a 20–minute film of the police interrogation during which the defendant admitted to the bank robbery, kidnapping, and murder was broadcast three times to the small community where the crime and the trial took place. The Court reversed the conviction without examining the voir dire transcripts for actual prejudice because "the spectacle" of the confession had rendered the trial "but a hollow formality." *Rideau*, 373 U.S. at 726, 83 S.Ct. at 1419.

In *Irvin v. Dowd*, the Supreme Court vacated a conviction and death sentence and remanded to allow a new trial where the prosecutor and police had issued highly publicized press releases stating that the defendant had confessed to the six murders for which he was being held. 366 U.S. 717, 81 S.Ct. 1639, 6 L.Ed.2d 751 (1961). The murder of six members of one family had become a "cause celebre," and the Court found that the constant barrage of inflammatory adverse publicity up to the day of the trial created a "pattern of deep and bitter prejudice" in the small Indiana community. Eight out of the twelve jurors selected thought the defendant was guilty in advance of trial. The Court concluded that the defendant could not be tried fairly in an atmosphere with "so huge a wave of public passion." *Id.* at 728, 81 S.Ct. at 1645.

The trial judge in *Sheppard* had allowed the press to dominate courtroom proceedings and had a press table placed inside the bar. The reporters caused such commotion inside and outside the courtroom that "bedlam reigned at the courthouse." *Sheppard*, 384 U.S. at 355, 86 S.Ct. at 1517. The press coverage was massive, pervasive and overwhelmingly adverse right up to and during the trial. The judge did nothing to insulate jurors or witnesses from reporters, photographers, or prejudicial material. The Court reversed the denial of the habeas petition, finding that the trial judge "did not fulfill his duty to protect Sheppard from the inherently prejudicial publicity which saturated the community and to control disruptive influences in the courtroom." 384 U.S. at 363, 86 S.Ct. at 1522.

A district court, having broad discretion to decide a transfer of venue, may consider all the circumstances, including the degree and timing of adverse publicity. *United States v. Maldonado–Rivera*, 922 F.2d 934, 966–67 (2d Cir.1990).

This court has studied the briefs and exhibits submitted by defendants and the government, and finds that the adverse pretrial publicity has not so saturated this district as to amount to presumed prejudice. It is true that this is a highly publicized case, and there have been articles adverse to defendants. But the overall nature of the publicity cannot be characterized as inflammatory. Much of the publicity is factual, and a significant amount has been favorable to defendants or prejudicial to the government and Abner Louima. There have been reports of defendants' claims of innocence, articles describing their good character, and reports casting doubt on the strength of the government's evidence and on Louima's credibility.

Moreover, although articles mentioning the assault continue to appear, there has been a lapse of time between the height of the publicity in August, 1997, and the scheduled time for jury selection, March 1999. *See Patton v. Yount*, 467 U.S. 1025, 1035, 104 S.Ct. 2885, 2891, 81 L.Ed.2d 847 (1984) (passage of time highly relevant in judging prejudicial effect of pretrial publicity).

Defendants point out that recent articles about and protests over the February 4, 1999 shooting of Amadou Diallo in the Bronx have made reference to the assault on Louima. Wiese requests that the trial be delayed by three months if a change of venue is not granted, and Schwarz requests a delay until "the public fixation has passed and the jury pool has ceased to be contaminated by a hostile media."

The court finds that, even with recent examples of adverse publicity, the passage of time since the height of the publicity as to this case, coupled with the fact that this is a large metropolitan area, has resulted in an atmosphere that does not even come close to the "huge wave of public passion" the Supreme Court found to be inherently prejudicial in *Irvin.* Nor is the atmosphere comparable to the prejudicial conditions engendered by the media in the other Supreme Court cases finding presumed prejudice. The court finds that neither a change of venue nor a delay of the trial based on presumed prejudice is warranted.

*Rule 21(a)*

 Under Rule 21(a) of the Federal Rules of Criminal Procedure, the court must transfer venue if there exists "so great a prejudice against the defendant that the defendant cannot obtain a fair and impartial trial at any place fixed by law for holding court in that district." Fed. R.Crim.P. 21(a). To succeed on a motion to change venue under Rule 21(a), defendants must show "a reasonable likelihood that prejudicial news prior to trial will prevent a fair trial." *Maldonado–Rivera,* 922 F.2d at 966–67.

The court finds that defendants have not shown a reasonable likelihood that such publicity has so permeated this district that a fair trial is impossible. Mere knowledge of the crime and the accused is an insufficient basis to transfer venue. *See Irvin,* 366 U.S. at 722, 81 S.Ct. at 1642 (jurors need not be totally ignorant of the facts and issues); *Murphy v. Florida,* 421 U.S. 794, 799, 95 S.Ct. 2031, 2036, 44 L.Ed.2d 589 (1975) (juror exposure to news accounts of crime does not by itself presumptively deprive defendant of fair trial). The Supreme Court has found that even pervasive and adverse pretrial publicity "does not inevitably lead to an unfair trial." *Nebraska Press Association,* 427 U.S. at 554, 96 S.Ct. at 2800.

In addition, transfer to a venue outside New York City would be hardly likely to diminish the level of media coverage. *See United States v. Dioguardi,* 428 F.2d 1033, 1039 (2d Cir.1970) (transfer to smaller city may result in more rather than less intensive publicity).

In any event, this issue is best determined during or after voir dire examinations. *See United States v. Livoti,* 8 F.Supp.2d 246, 249 (S.D.N.Y.1998) (even if media coverage was prejudicial, defendant failed to show impartial jury cannot be selected following careful voir dire questioning); *United States v. Washington,* 813 F.Supp. 269 (D.Vt.1993) (voir dire is best time to assess impact of negative publicity); *United States v. McDonald,* 740 F.Supp. 757, 761 (D.Alaska 1990) ("[a]ny attempt to measure the prejudicial effect of publicity on prospective jurors prior to voir dire would be merely speculative"); *United States v. Sinclair,* 424 F.Supp. 719, 720 (D.Del.1976) (in absence of extraordinary circumstances decision to change venue should await voir dire).

Careful voir dire questioning is a recognized and effective tool to uncover bias. *Patton,* 467 U.S. at 1038 n. 13, 104 S.Ct. at 2892 n. 13. Indeed, thorough voir dire examinations have been used in this circuit to produce unbiased juries, even in high-profile cases. *See In re Application of National Broadcasting Co., Inc.,* 635 F.2d 945, 953 (2d Cir.1980) ("The opportunity for voir dire examination still remains a sufficient device to eliminate from jury service those so affected by exposure to pre-trial publicity that they cannot fairly decide issues of guilt or innocence."); *United States v. Gotti,* 753 F.Supp. 443 (E.D.N.Y.1990); *United States v. Amuso,* 10 F.Supp.2d 227 (E.D.N.Y.1998) (organized crime); *United States v. Yousef,* 1997 WL 411596 at *3 (S.D.N.Y. July 18, 1997) (World Trade Center bombing case); *United States v. Livoti,* 8 F.Supp. 2d 246, 249 (S.D.N.Y.1998) (denying change of venue to Albany in high-profile police brutality case).

The court will await voir dire to assess the impact of pretrial publicity in this case.

*Supervisory Power*

Defendants Volpe and Wiese move in the alternative for a change of venue based on the court's "federal supervisory power," described by the Supreme Court as "the power to formulate and apply proper standards for enforcement of the criminal law in the federal courts." *Marshall v. United States* 360 U.S. 310, 79 S.Ct. 1171, 3 L.Ed.2d 1250 (granting new trial where jurors read news accounts of information the trial judge deemed too prejudicial to admit in evidence).

Defendants do not cite to any Second Circuit case that has applied the supervisory power to a transfer of venue. Based on the parties' submissions, the court finds that at present a change of venue based on its federal supervisory power is not warranted.

Defendants' pre-voir dire motions for a change of venue or delay of trial will be denied.

IV. Motion for a Kastigar Hearing

■ Defendant Bellomo seeks a hearing pursuant to *Kastigar v. United States,* 406 U.S. 441, 92 S.Ct. 1653, 32 L.Ed.2d 212 (1972), to determine whether the charges against him were the impermissible product of his immunized statement to the New York City Police Department's Internal Affairs Bureau.

In *Kastigar,* the Supreme Court held that the compelled testimony of a person who is under a grant of immunity cannot be used against that person in a subsequent criminal proceeding, and that the prosecution has the burden of proving affirmatively that the evidence it proposes to use is derived from a legitimate source wholly independent of the compelled testimony. 406 U.S. at 453, 459, 92 S.Ct. at 1661, 1665.

Bellomo asserts that by the time the federal prosecutors assigned to this case interviewed him on October 30, 1997, they had been exposed to the contents of the immunized statement that Bellomo gave to Internal Affairs on August 13, 1997, and that the prosecutors then made improper use of that statement when they questioned Bellomo. Bellomo offers no facts to support this contention. He merely asserts that "the agents were well aware of the substance and content" of his immunized statement when they interviewed him.

While the government prosecutors need not show that the prosecution team had no exposure to the immunized statement at all, *United States v. Nanni,* 59 F.3d 1425, 1432 (2d Cir.1995), the government says just that. They deny any knowledge of the content of Bellomo's immunized statement, and assert that a "Chinese wall" was erected at the outset between the prosecution team who had access to Bellomo's taped statements as part of an investigation into a separate matter, and the prosecution team investigating the alleged assaults on Abner Louima.

Bellomo questions the integrity of that wall. The court has no reason to doubt the government's affidavits that the prosecution team in this case has had no access to the contents of Bellomo's compelled statements. The court will defer until after the trial a *Kastigar* hearing, should one become necessary.

While the court has discretion to hold the hearing before, during, or after the trial, *see United States v. Tantalo,* 680 F.2d 903 (2d Cir.1982), it is the general practice in this circuit to defer such a hearing until after trial. *See, e.g., United States v. Helmsley,* 941 F.2d 71, 80 (2d Cir.1991); *United States v. Rivieccio,* 919 F.2d 812, 814 (2d Cir.1990); *United States v. Mariani,* 851 F.2d 595, 597 (2d Cir. 1988).

The court can then evaluate whether the government's evidence was from independent sources, and avoid disclosure of the government's proof before trial. *See United States v. Gregory,* 611 F.Supp. 1033, 1042 (S.D.N.Y.1985); *Helmsley,* 941 F.2d at 80 (post-trial hearing enabled trial judge

to determine "with the benefit of trial evidence whether there was a sufficient nexus between the immunized testimony and the federal prosecution to warrant a hearing").

The court will conduct a *Kastigar* hearing, if necessary, after the trial.

Bellomo's motion for a pretrial evidentiary hearing will be denied.

### V. Motions for Discovery

Defendants Volpe, Schwarz, Bruder, and Bellomo seek an order compelling the production of various items of discovery.

#### (i) Volpe's Motion

Volpe makes various requests for discovery pursuant to Rule 16 of the Federal Rules of Criminal Procedure. In the absence of specific refutation, the court accepts the government's representations that it has already complied with the requirements of Rule 16, and that in the event expert witnesses are to be called at trial, the government will provide in a timely fashion all relevant information as required by Rule 16.

■ In addition, Volpe requests identifying information on witnesses whom the government does not intend to call for trial. The government is not required to identify individuals it will not call as trial witnesses. *See United States v. Canty,* 971 F.Supp. 687, 692 (N.D.N.Y.1997).

Volpe's other discovery requests are addressed below under *Brady* material.

#### (ii) Schwarz and Bruder's Motions

The court accepts the government's representations that it has already provided to defendants Schwarz and Bruder the material they request in connection with Count 13 of the superseding indictment.

Defendants' request unredacted telephone records for the time periods referred to in the indictment. The government asserts that none were provided in redacted form. There are thus no records for the court to rule on.

#### (iii) Bellomo's Motion

■ Bellomo seeks the tape recording of his interview on August 13, 1997 with the Internal Affairs Bureau, an interview that was the subject of his motion for a *Kastigar* hearing. He makes his request under The Federal Rules of Criminal Procedure 16(a)(1)(A), relating to defendant's statements, which provides in pertinent part:

> Upon request of a defendant the government must disclose to the defendant and make available for inspection, copying, or photographing: any relevant written or recorded statements made by the defendant, or copies thereof, within the possession, custody, or control of the government, the existence of which is known, or by the exercise of due diligence may be come known, to the attorney for the government; [and] that portion of any written record containing the substance of any relevant oral statement made by the defendant whether before or after arrest in response to interrogation by any person then known to the defendant to be a government agent. . . .

Fed.R.Crim.P. 16(a)(1)(A).

As noted above, the government says that the trial team in this case has not had, nor will it have, access to that tape.

The government argues that because it will not use the statement at trial in its direct case, to cross-examine Bellomo should he testify, or for any other reason, Bellomo will incur no prejudice from the nondisclosure of the statement and the request should be denied.

Bellomo asserts that he is entitled to the statement because the advisory committee notes for the 1991 amendment to Rule 16 say that the government is required to provide defendant's statements "without regard to whether the prosecution intends to use the statement at trial." He further argues that even though this prosecution team does not have a copy of the taped interview, the "government," that is, some other group in the Justice Department, is

in possession of the tape and must turn it over in compliance with Rule 16.

The question presented here is whether statements by the defendant to which the prosecution has no access are discoverable under Rule 16(a)(1)(A). To answer this the court examines what it means to be "in possession, custody, or control of the government" for purposes of Rule 16.

The Second Circuit has not ruled on this issue, but courts in this and other circuits have analyzed the phrase "in possession, custody, or control of the government" as it appears in Rule 16(a)(1)(C), which relates to the discovery of certain documents and tangible objects. Rule 16(a)(1)(C) provides, in pertinent part:

> Upon request of the defendant the government shall permit the defendant to inspect and copy or photography books, papers, documents, photographs, tangible objects, buildings or places, or copies or portions thereof, which are within the possession, custody or control of the government, and which are material to the preparation of the defendant's defense or are intended for use by the government as evidence in chief at the trial, or were obtained from or belong to the defendant.

Fed.R.Crim.P. 16(a)(1)(C).

Courts have construed the term "government" in this rule narrowly to mean the prosecutors in the particular case or the governmental agencies jointly involved in the prosecution of the defendant, and not the "government" in general. *See United States v. Upton*, 856 F.Supp. 727, 749–50 (E.D.N.Y.1994) (government not required to produce material from agency outside of United States Attorney's Office because there was no "joint investigation"); *United States v. Guerrerio*, 670 F.Supp. 1215, (S.D.N.Y.1987) (denying Rule 16 discovery request where there was no joint investigation with Bronx District Attorney's office and United States Attorney's Office had no control over Bronx material); *United States v. Poindexter*, 727 F.Supp. 1470, 1477 (D.D.C.1989) (Rule 16 required production of only those documents in hands of prosecutor, any investigative unit under the prosecutor's control, and other federal agencies "allied with the prosecution").

Another factor in the analysis is whether or not the prosecution has access to the materials. *See United States v. Bryan*, 868 F.2d 1032, 1035–36 (9th Cir. 1989) (scope of Rule 16 obligation turns on "the extent to which prosecutor has knowledge of and access to the documents sought by the defendant in each case"); *United States v. Trevino*, 556 F.2d 1265, 1272 (5th Cir.1977) ("government" in Rule 16 refers to prosecution and did not authorize disclosure of presentence report in control of probation officer); *United States v. Robertson*, 634 F.Supp. 1020, 1025 (E.D.Cal.1986) (scope of term "government" for Rule 16 turns on prosecution's access to the relevant evidence, and giving "government" its broadest reading would wreak havoc and give defense access to information not readily available to prosecution).

Although Rules 16(a)(1)(A) and 16(a)(1)(C) each apply to different kinds of discoverable items, the court sees no reason why it cannot apply the same interpretation of "in possession, custody or control of the government" to both subsections.

While the above cases addressed the United States Attorney's Office and some other arm of the government, this case involves separate investigations within the United States Attorney's Office itself. Nevertheless, the court deems that the same principles apply: Where the two prosecution teams within the United States Attorney's office are not involved in a joint investigation, and where the prosecution does not have access to the material requested, the "government" is not required to produce the requested material.

The material cannot simply be in the possession of another prosecution team, nor may the prosecution simply assert that they will not use the material at trial. The

prosecution must show that it has no access to it.

The Second Circuit has recognized the practice of building a "Chinese wall" in the United States Attorney's Office to protect the integrity of separate investigations, even though there is no express statutory authority for such a procedure. *See In the Matter of the Grand Jury Subpoena of Ford v. United States*, 756 F.2d 249, 254–55 (2d Cir.1985).

For purposes of this discovery motion, the court will accept the affidavits affirming that the prosecutors in this case have not had access to Bellomo's taped interview. The government will be required to show at the end of the trial, if necessary, that the evidence it used at trial was not tainted by the testimony contained in the tape in question.

The advisory committee notes for the 1991 amendment to Rule 16 acknowledge that "the defendant has some proprietary interest in statements made during interrogation regardless of the prosecution's intent to make any use of the statements." The denial of this discovery request does not leave Bellomo without recourse; he may subpoena the tape directly from those government officials who do exercise control over it.

In addition, Bellomo requests any notes or reports of his conversations with Internal Affairs Bureau Duty Captain James Serra and NYPD Deputy Chief Raymond Powers during August of 1997. The government says that it is unaware of any notes generated by Captain Serra and that it has already produced notes taken by Deputy Chief Powers.

Bellomo's discovery requests will be denied.

### VI. Motions to Suppress Eyewitness Identifications

Defendants Volpe and Bruder, based on their Fifth Amendment right to due process, move for an order to suppress both out-of-court and potential in-court identifications by eyewitnesses who selected their photographs from photo arrays prior to the indictment in this case.

Volpe says that Abner Louima was shown an array of six photographs, with photograph number four being that of Volpe, and he questions the reliability of Louima's identification based on the following: (1) The "relative uncertainty" of Louima's alleged statement that number four "looks like the guy" should have prompted the police to arrange a line-up with Volpe physically present; (2) Louima allegedly said prior to the identification procedure that his assailant had "spiked hair," a description that does not match or fit Volpe; and (3) Louima's exposure to media images of Volpe. He also raises general concerns about the procedures used to secure any out-of-court identification of him by Patrick Antoine.

Volpe requests a hearing to determine whether the identification procedures were impermissively suggestive and/or whether the identification was influenced by pretrial publicity. The government objects to a hearing and to the suppression of identification evidence of Volpe.

Eyewitness identification testimony following a pretrial identification by photograph is admissible unless the photographic identification procedure was "so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification." *Simmons v. United States*, 390 U.S. 377, 384, 88 S.Ct. 967, 971, 19 L.Ed.2d 1247 (1968). Due process protects a defendant's right not to be the object of such impermissibly suggestive police procedures. *Id.* at 386, 88 S.Ct. at 972.

Even if the court finds that the pretrial identification procedure was impermissibly suggestive, identification testimony at trial is admissible if the witness has, based on "the totality of the circumstances," a reliable independent basis for making that identification. *Neil v. Biggers*, 409 U.S. 188, 199, 93 S.Ct. 375, 382, 34 L.Ed.2d 401 (1972); *Manson v. Brathwaite*, 432 U.S.

98, 114, 97 S.Ct. 2243, 2253, 53 L.Ed.2d 140 (1977).

Factors to consider include the opportunity of the witness to view the criminal at the time of the crime, the witness' degree of attention, the accuracy of his prior description of the criminal, the level of certainty demonstrated at the confrontation, and the time between the crime and the confrontation. *Biggers,* 409 U.S. at 199–200, 93 S.Ct. at 382.

A pretrial hearing on the suggestiveness of identification procedures is favored, but not constitutionally required. *Watkins v. Sowders,* 449 U.S. 341, 349, 101 S.Ct. 654, 659, 66 L.Ed.2d 549 (1981). Whether to hold a hearing is within the discretion of the district court. *United States v. Archibald,* 734 F.2d 938 (2d Cir.1984).

When the defendant fails to make a threshold showing that "the surrounding circumstances or actual conduct" of the procedures used to secure identifications were unduly suggestive, the appearance at a pretrial hearing of the witness who made the identification is not required. *United States v. Leonardi,* 623 F.2d 746, 755 (2d Cir.1980).

■ Where a defendant's motion is based entirely on speculation as to how the procedures used in the identification might have been suggestive, and does not challenge the arrays themselves, a pre-trial hearing is not appropriate. *United States v. Ruggiero,* 824 F.Supp. 379, 396 (S.D.N.Y.1993).

In evaluating the fairness of a photographic identification, courts consider the size of the array, the manner of presentation by law enforcement officers, and the array's contents. *United States v. Maldonado–Rivera,* 922 F.2d 934, 974 (2d Cir. 1990).

■ Although Volpe does not challenge the array, the court reviewed it and found nothing impermissibly suggestive about it. The array consisted of six photographs, a constitutionally adequate number. *See*

*United States v. Bennett,* 409 F.2d 888, 898 (2d Cir.1969). The photographs were of adult white men with facial features and hair style and color similar to that of the defendant. Each photograph is in color, and each is identical in size. No one picture stands out from the rest, and nothing about the photographs' appearance or arrangement makes the array unduly suggestive as to Volpe. *See Jarrett v. Headley,* 802 F.2d 34, 41 (2d Cir.1986).

That Louima said the photograph "looks like the guy" does not indicate the surrounding procedures were improper, nor does Louima's alleged description prior to being shown the array that his assailant had "spiked hair."

The government says that it intends to prove at trial that the law enforcement officer who secured the identification from Louima was unaware that Volpe was the subject of the photo array or that his photograph was in position number four. In addition, the government asserts that the evidence at trial will show that the identification evidence is independently reliable based on Louima's close contacts with his assailant, the memorable nature of the confrontation, the accuracy of his description of Volpe prior to seeing the photographic array, and the short span of time between the incident and the identification of Volpe's photograph.

Bruder's motion to suppress eyewitness identifications at trial is based on a conclusory statement that the out-of-court identification procedures were "suggestive."

Upon review of the array containing Bruder's photograph, the court finds that it consists of six color photographs of identical size, each of adult white men with facial features and hair style and color similar to Bruder. No one picture stands out from all the rest. Nothing about the photographs' appearance or arrangement makes the array unduly suggestive as to Bruder.

As neither Volpe nor Bruder challenge the fairness of the array, nor do they

suggest any particular impropriety regarding the surrounding procedures, they have failed to make a threshold showing that a pretrial hearing on eyewitness identifications is warranted. Nevertheless, in an abundance of caution, the court will conduct a hearing. The hearing will be limited to the testimony of the government officials who showed the arrays to the witnesses and the testimony will be limited to the procedures used in showing the arrays.

Volpe's contention that the identifications may have been tainted by exposure to media images of him is a matter that goes to the weight of the evidence. *See, e.g., United States v. Grose,* 525 F.2d 1115, 1117–1118 (7th Cir.1975); *United States v. Zeiler,* 470 F.2d 717, 720 (3d Cir.1972). He cites no decision holding invalid witness identification following such publicity. The appropriate method for testing the trustworthiness of such evidence is "the time-honored process of cross-examination" at trial. *Watkins,* 449 U.S. at 349, 101 S.Ct. at 659.

### VII. Motion to Preclude Testimony

■ Defendant Wiese moves pursuant to 18 U.S.C. § 201(c)(2), the federal anti-bribery statute, to preclude the testimony of any government witness who was offered anything in exchange for his or her testimony. He relies on the initial Tenth Circuit panel decision in *United States v. Singleton,* 144 F.3d 1343 (10th Cir.1998). That decision was recently reversed on rehearing, 165 F.3d 1297, 1999 WL 6469 (10th Cir. Jan.8, 1999) (*en banc*). The court finds not the faintest merit in the motion.

### VIII. Motions for a Bill of Particulars

■ All five defendants request a variety of information in a bill of particulars. The purposes of a bill of particulars are to ensure that the defendant adequately understands the nature of the charges against him so he can prepare his defense and plead double jeopardy if subsequently prosecuted for the same offense. *Wong*

*Tai v. United States,* 273 U.S. 77, 80–81, 47 S.Ct. 300, 301, 71 L.Ed. 545 (1927). A bill of particulars is thus required only when the charges in the indictment are cast so generally that they do not advise the defendant of the specific acts he is charged with. *See United States v. Schwimmer,* 649 F.Supp. 544, 550 (E.D.N.Y.1986).

A bill of particulars is not a discovery tool and is not intended to allow a defendant a preview of the evidence or the theory of the government's case. *See United States v. Bortnovsky,* 820 F.2d 572, 574 (2d Cir.1987). A defendant may not have a bill of particulars as a means to obtain the government's witness list.

■ Volpe requests (1) the names of civilian witnesses who witnessed the altercation between Volpe and Louima outside the Club Rendez Vous and (2) the statements of Police Officers Rolando Aleman and Francisco Rosario given to law enforcement. These requests are beyond the proper scope and function of a bill of particulars.

Schwarz and Bruder request (1) a statement of when and where the alleged agreement to obstruct justice as charged in Count Thirteen (which will be severed) was made by the defendants; (2) what was said by Schwarz, Wiese, and Bruder when they made the alleged agreement; and (3) when and where any and all acts in furtherance of that agreement were performed or attempted.

■ The government has no duty to disclose the precise manner in which a crime alleged in the indictment was committed. *See United States v. Andrews,* 381 F.2d 377, 377–78 (2d Cir.1967) (per curiam). The indictment in Count Thirteen gives a background of the criminal investigation into the alleged restroom assault of Louima, the means and time of the alleged obstruction, and the names of the conspirators. It also gives a description of several of the acts committed in furtherance of the

conspiracy. It is sufficiently detailed to allow defendants to prepare adequately their defense.

Wiese requests detailed evidentiary material from the government while assuring the court in his papers that he is "cognizant that a bill of particulars is not a discovery device." With respect to Count One, charging Volpe, Schwarz, Bruder, and Wiese with conspiracy to deprive Louima of his civil rights, Wiese requests, among other things: information about all overt acts known to the government but not alleged in the indictment, and for each such act, the exact dates, places, times, and manner in which the event occurred, any weapons or instrumentalities used, the names of each alleged conspirator or other persons present, the respective roles and manner of participation of each persons present, the place and purpose of all meetings between conspirators alleged to be in furtherance of the conspiracy, and the exact number of times the defendant and co-conspirators allegedly used unreasonable force and the exact dates and times of such use of force.

With respect to Counts Two and Three, Wiese requests detailed evidentiary material and information about the prosecution's defense strategy: information on the exact dates, times, places, and manners in which the events alleged occurred, any weapons or instrumentalities used, the names of co-defendants and other persons present, the respective roles and manner of participation of each person present, and information about how each co-defendant or conspirator planned, executed, concealed, or planned to conceal the events alleged.

Wiese's requests ignore the proper scope and function of a bill of particulars. His motion will be denied.

Similarly, Bellomo requests various evidentiary material from the government pertaining to Counts Five, Six, Eight, Ten, and Eleven. They are also beyond the scope and function of a bill of particulars.

## IX. Motion to Stay Trial

 Volpe moves to stay this trial until resolution of the trials of Rolando Aleman and Francisco Rosario. Those two were charged in a criminal complaint dated December 11, 1998 for conspiring to make, and making, false statements to the Federal Bureau of Investigation concerning the alleged assault of Louima in the restroom. Volpe says Aleman and Rosario are important, potential witnesses possessing information exculpatory of him. Specifically, he cites statements previously made by them that they saw persons other than Volpe remove Louima from the bathroom on the night of the alleged restroom assault.

Volpe states that "because of the pending complaints against them" Rosario and Aleman likely will invoke their Fifth Amendment right and not testify. Volpe claims the government has "effectively . . . negate[d] them as defense witnesses" by filing the criminal complaint. The implication of Volpe's argument is that he would have had the benefit of the testimony of Aleman and Rosario had it not been for the government's filing a criminal complaint against them. He requests that this trial be stayed until the resolution of the government's case against them so that Volpe can have the benefit of these witnesses' testimonies.

The court does not agree with Volpe's characterization of events. The Fifth Amendment to the United States Constitution states in part that "[n]o person . . . shall be compelled in any criminal case to be a witness against himself." The privilege may be invoked when there is a reasonable fear of prosecution. Allegedly Aleman and Rosario gave false statements to and withheld information from federal authorities about events surrounding the alleged restroom assault of Louima. After being confronted with evidence contradicting their statements, they allegedly then admitted that they had lied. It was not until after these events that the government filed a criminal complaint against

them. If Aleman and Rosario invoke their privilege against self-incrimination, it will be because of their own actions not the government's.

Moreover, the government states that the complaint against Aleman has been dismissed without prejudice and that at present, it has no intention of prosecuting either Aleman or Rosario before this trial.

Volpe's motion to stay this trial will be denied.

## X. Motions for 404(b) and 609 Evidence

Defendants Volpe, Schwarz, Bruder and Wiese request notice of any evidence the government intends to introduce pursuant to Federal Rules of Evidence 404(b). Defendant Volpe also requests notice of any evidence of prior crimes the government intends to introduce pursuant to Federal Rules of Evidence 609.

Rule 404(b) permits the introduction of evidence of other crimes, wrongs or acts in order to show such things as motive, opportunity, intent, preparation, plan, knowledge, identity or absence of mistake or accident. Notice of the general nature of such evidence must be given before trial or during trial if the court excuses pretrial notice for good cause.

Rule 609(a) permits the introduction of evidence of a felony conviction upon a finding that the probative value outweighs the prejudice to the defendant, or if it involved dishonesty or false statements. Rule 609(b) provides that evidence of a conviction more than ten years old is not admissible unless the proponent gives advance notice and the court determines that the probative value substantially outweighs the prejudicial effect.

The government asserts that should it seek to introduce evidence of prior crimes, acts or wrongs on the part of any defendant pursuant to Rule 404(b), it will provide reasonable notice in advance of trial and seek a ruling from the court as to its admissibility. The government also says it is unaware of any prior convictions on the part of any of the defendants, and should it

become aware of any it intends to use for impeachment purposes pursuant to Rule 609, it will provide appropriate notice and request a ruling from this court.

## XI. Motions for Brady Material

■■■ Defendants move for an order compelling the production of exculpatory material pursuant to *Brady v. Maryland,* 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), and impeachment material pursuant to *Giglio v. United States,* 405 U.S. 150, 92 S.Ct. 763, 31 L.Ed.2d 104 (1972). Under *Brady,* the government is constitutionally required to disclose evidence, upon request, that tends to exculpate the defendant. *Brady,* 373 U.S. at 88, 83 S.Ct. at 1197. *Giglio* requires disclosure of evidence affecting the credibility of a witness whose reliability may be dispositive of a defendant's guilt or innocence. *Giglio,* 405 U.S. at 154, 92 S.Ct. at 766.

The government asserts that it is aware of its *Brady* obligations, as well as the ongoing nature of those obligations. The "assurance by the government that it has in its possession no undisclosed evidence that would tend to exculpate defendant justifies the denial of a motion for inspection that does not make some particularized showing of materiality and usefulness." *United States v. Evanchik,* 413 F.2d 950, 953 (2d Cir.1969). The government is aware of decisions such as *Grant v. Alldredge,* 498 F.2d 376 (2d Cir.1974), and therefore presumably knows of no specific evidence of a material nature requiring disclosure at this time.

Defendants' *Brady* requests of a general nature will be denied.

As part of its *Brady* disclosures, the government provided to defense counsel in its October 14, 1998 discovery letter a list of forty-seven police officers who were in the vicinity of the Club Rendezvous in the early morning hours of August 9, 1997, as well as a list of officers who maintained custody over Abner Louima at Coney Island Hospital. Defendants seek disclosure of summaries of any exculpatory state-

ments given by the police officers named in this list.

Bellomo says he is faced with the "insurmountable task" of questioning "fifty-two" individuals who may or may not have information relevant to him, and asks in the alternative for an in camera inspection of the summaries so that the court may determine which officers have exculpatory statements relative to Bellomo only.

Schwarz and Bruder say they need summaries because they are restrained and "prohibited" from interviewing these police officers by court order.

Providing the names of witnesses, without full statements or summaries of whatever exculpatory information they may have, has been sufficient in this circuit for the government to be in compliance with *Brady*. *United States v. LeRoy*, 687 F.2d 610, 618 (2d Cir.1982). As long as the defendant has the "essential facts permitting him to take advantage of any exculpatory evidence," then such evidence has not been "suppressed" by the government in violation of *Brady*. *Id.; United States v. Stewart*, 513 F.2d 957, 960 (2d Cir.1975).

That there are many names on the list does not augment the government's *Brady* obligations. *Brady* is a rule of access, not convenience. The rationale behind the rule is to assure that the government does not deny a defendant access to exculpatory evidence known only to the government. *LeRoy*, 687 F.2d at 619. As such, it is "not a discovery rule, but a rule of fairness and minimum prosecutorial obligation." *United States v. Beasley*, 576 F.2d 626, 630 (5th Cir.1978).

Bellomo, Schwarz, and Bruder have been on notice since October, 1998, of the names of these witnesses; they have been free to interview them since then, or they may subpoena them to testify at trial.

Schwarz and Bruder's claim that they cannot interview the witnesses on the list is without merit. The court's September 11, 1998 order was clear: it did not prohibit counsel for Schwarz and Bruder from interviewing witnesses in this action or in the civil actions filed by Louima and Antoine; it only prohibited them from rendering legal services or making recommendations as to counsel for any witness in those cases.

Also without merit is the claim of Schwarz and Bruder that the government withheld specific *Brady* information by not including the names of Rolando Aleman and Francisco Rosario in the list of the forty-seven police officers provided in the October 14, 1998 discovery letter. The government's May 6, 1998 discovery letter to all defense counsel not only included the names of those two officers, but also summaries of their statements as well.

Schwarz and Bruder also request information on the government's review of the investigation of this case by the Department of Justice's Office of Professional Responsibility. The court accepts the government's representation that the investigation did not result in any *Brady* material.

Bruder requests all evidence relating to the "Good Samaritan" police officer who allegedly came to Louima's aid while he was in the 70th precinct. The court accepts the government's assurances that such information neither relates to nor is exculpatory of any of the allegations against Bruder.

Bruder also requests information on any witnesses who were given opportunities to identify him as one of the perpetrators of the alleged acts and did not. The government asserts that it has provided all defendants with identifications made as well as failures to identify individuals from photo arrays, along with copies of the photo arrays.

Bruder's request for information about the photo array identification procedures and information about witnesses who may have been present will be denied, except that, in accordance with the court's ruling on the motions on eyewitness testimony, a hearing will be held limited to the sole

issue of the procedures used in showing the photo arrays. *See United States v. Wei,* 862 F.Supp. 1129, 1134–35 (S.D.N.Y. 1994) (disclosure of parties present at photo identifications would prematurely disclose identity of government witnesses); *United States v. Taylor,* 707 F.Supp. 696, 704–05 (S.D.N.Y.1989) (rejecting request for names of persons present at photo spread viewings; only photographs and tangible evidence need be turned over before trial).

As for defendants' requests for impeachment material, the court accepts the government's assurances that it will provide in a timely fashion impeachment material for its witnesses, including, as suggested by several defendants, any retractions by Louima or any "courtesies" that he may have received from law enforcement.

■ Although *Brady* material and impeachment evidence generally need not be disclosed before trial, *United States v. Nixon,* 418 U.S. 683, 701, 94 S.Ct. 3090, 3104, 41 L.Ed.2d 1039 (1974); *United States ex rel. Lucas v. Regan,* 503 F.2d 1, *3 n. 1 (2d Cir.1974), the court recognizes that in some cases if the exculpatory evidence is produced for the first time at trial, it may be too late to use effectively, "particularly if it points to the existence of other evidence helpful to the defendant." *United States v. Crozzoli,* 698 F.Supp. 430, 436 (E.D.N.Y.1988).

The court thus directs the government to continue to fulfill its ongoing *Brady* obligations, and to provide any impeachment and exculpatory material sufficiently in advance of trial to allow the defense to use the information effectively in the preparation and presentation of its case.

XII. Motion to Waive A Jury Trial

■ Defendant Wiese's attorneys wrote to the court saying he wished to waive his right to a jury trial and submit his case to the court alone. Rule 23(a) of the Federal Rules of Criminal Procedure provides that a criminal case "required to be tried by jury shall be so tried unless the defendant waives a jury trial in writing with the approval of the court and the consent of the government." In the absence of some extraordinary circumstances, not present here, *Singer v. United States,* 380 U.S. 24, 85 S.Ct. 783, 13 L.Ed.2d 630 (1965), the court has no authority to direct a non-jury trial in the light of the government's failure to consent.

XIII

The court denies defendants' motions except to the extent stated above.

So ordered.